**Norman L. LONGVAL,
Petitioner-Appellant,**

v.

**Lawrence R. MEACHUM et al.,
Respondents-Appellees.**

**No. 80–1503.**

United States Court of Appeals,
First Circuit.

Argued April 7, 1981.

Decided June 19, 1981.

Corey M. Belobrow, Boston University Law Student, with whom John Leubsdorf, Associate Professor of Law, Boston, Mass., Court appointed counsel, Jeffrey Lesser, Christine Schwab, and James R. Wacht, Boston University Law Students, on brief, for petitioner-appellant.

Annette C. Benedetto, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen. and Barbara A. H. Smith, Asst. Atty. Gen., Chief, Crim. Appellate Div., Boston, Mass., on brief, for respondents-appellees.

Before COFFIN, Chief Judge, ALDRICH and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

Appellant Norman Longval appeals from a judgment of dismissal entered by the United States District Court for the District of Massachusetts denying his petition for habeas corpus. The petition challenged Longval's original forty to fifty-year prison sentence as an unconstitutional punishment for his exercise of the right to trial. We reverse and remand for resentencing de novo.

Longval was indicted jointly with Richard T. Ellard and Kenneth M. Golden on two charges of armed robbery of a pharmacy, assault by means of a dangerous weapon, unlawfully carrying a sawed-off shotgun, and using a motor vehicle without authority. Ellard pled guilty to all indictments[1] and was given sentences totalling three years in the Billerica House of Corrections—two years on the assault with a dangerous weapon charge and one year on the motor vehicle charge—and a consecutive term of three years' probation. Longval and Golden pled not guilty; the jury trial was conducted by the same judge who sentenced Ellard. Longval was convicted on all indictments and sentenced to concurrent terms of 32 to 40 years on the two armed robbery charges, and concurrent terms of eight to ten years on the assault and gun carrying charges, to be served from and after the sentences for armed robbery. The eight to ten-year sentence for assault with a dangerous weapon was in excess of the five-year statutory maximum. Mass.Gen. Laws Ann. ch. 265, § 15B. Golden was acquitted on all indictments.

On sentence appeal, the Appellate Division reduced Longval's sentence as follows: concurrent terms of 30 to 40 years on the armed robbery indictments and lesser terms as to the other sentences,[2] all to be served concurrently with the sentence for armed robbery.

Longval then appealed pursuant to Mass. Gen.Laws Ann. ch. 278, §§ 33A–G claiming that the court abused its discretion in sentencing, that the sentences were unlawfully disparate when compared with Ellard's terms, and, further, that the trial judge unconstitutionally punished him for exercising his right to trial. He subsequently filed

a petition for a writ of error in the Supreme Judicial Court attacking his sentences. Because the petition referred to matters outside the record, the Single Justice, handling the matter, ordered the record on appeal expanded to include the transcript of Ellard's plea and sentencing. A special master was appointed to report on the substance of an unrecorded lobby conference between the court, counsel for defendant, and the assistant district attorney. The master held a hearing at which he received testimony from all but the trial judge.[3] Because defense counsel and the government prosecutor agreed that the trial transcript made no reference to the lobby conference in question, the master made his findings without reading the transcript. The master found that, before Longval had an opportunity to present his evidence, there was a lobby conference at which the judge stated in essence to defense counsel:[4]

> Mr. Primason, the evidence in this case as it is coming in is very serious,—robbery of a drug store, taking [i. e. theft of] drugs, use of a shot gun. I am wondering if you and the Commonwealth have had any discussion regarding a plea [of guilty]. I strongly suggest that you ask your client to consider a plea, because, if the jury returns a verdict of guilty, I might be disposed to impose a substantial prison sentence. You know that I am capable of doing that because you know of the sentences in a previous trial.

The Supreme Judicial Court affirmed the judgments of conviction, *Commonwealth v. Longval*, 390 N.E.2d 1117 (Mass.1980), and rejected appellant's claim that he was punished for exercising his right to trial. The court recognized the constitutional principle that a defendant is entitled to exercise his

1. The Massachusetts Supreme Judicial Court uses the term "indictments" to describe what would be called "counts" in federal parlance.

2. The other reduced sentences were four to five years on the assault with a dangerous weapon charge, and eight to ten years on the charge of carrying a dangerous weapon.

3. Both counsel were afforded the opportunity to call the judge as a witness, but chose not to

do so; they did consult with him by telephone and he stated that, although one might have taken place, he could not recall any lobby conference.

4. The government attorney could not remember the lobby conference and the special master's findings were, therefore, based largely on the testimony of Longval's defense counsel.

right to trial free from the threat of punishment, but did not "read the words of the judge . . . as supporting an inference of . . . punishment or threat of punishment," *id.* at 1120, and concluded that his statements were not "inappropriate." *Id.* It held that the widely disparate sentences as between Ellard and Longval were justified by their widely disparate criminal records.

Appellant next filed a petition for a writ of habeas corpus in the district court, charging that his due process rights had been violated because he was penalized for exercising his right to trial by jury. The court dismissed the petition without opinion and subsequently declined to certify probable cause, stating that the application and appeal were "frivolous." This court granted a certificate of probable cause on August 3, 1980. Before us, Longval presses the arguments that the trial court of the Commonwealth violated his constitutional rights by imposing a substantial prison sentence because he chose to plead not guilty and proceed to trial, that the Appellate Division's reduction of his sentence to 30–40 years does not expunge beyond a reasonable doubt the taint of unconstitutionality, and that the violation and its effects will not be removed unless he is sentenced de novo by a different judge.

With respect to appellant's first argument, we begin with the premise that those who choose to exercise the rights which our judicial system confers must be able to do so without fear of penalty. "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). Thus, the Supreme Court has protected defendants who exercise their right to appeal from possible vindictiveness on the part of the trial judge, *see North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), or the prosecutor, *see Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). This court has held that the accused "should not have to fear even the possibility," *Marano v. United States,* 374 F.2d 583, 585 (1st Cir. 1967), that he will

suffer a penalty for exercising his rights. *See Lovett v. Butterworth,* 610 F.2d 1002, 1005 (1st Cir. 1979), *cert. denied,* 447 U.S. 935, 100 S.Ct. 3038, 65 L.Ed.2d 1138 (1980). The court in *Pearce* held that "due process . . . requires that a defendant be freed of the apprehension of such retaliatory motivation on the part of the sentencing judge." 395 U.S. at 725, 89 S.Ct. at 2080. In *Lovett,* we quoted approvingly the view that:

"In effect, *Blackledge* sets up a per se rule . . . that in some situations a due process violation can be established by a showing that defendants might have a reasonable apprehension of prosecutorial vindictiveness, without a showing that the prosecutor actually had a vindictive or retaliatory motive to deter appeals." *Jackson v. Walker,* 585 F.2d [139] at 143 [5 Cir.] "The semblance of vindictiveness that arises from the imposition of a harsher sentence the second time around must be obviated so that the proceedings do not leave the impression of unfairness to the defendant . . . and so that other defendants are not deterred from exercising rights of appeal due to apprehension of vindictiveness." *United States v. Tucker,* 581 F.2d 602 (7th Cir. 1978). Otherwise the situation is too suggestive of the possibility of vindictive motive. "Due process of law requires that such a potential for vindictiveness not enter into [Massachusetts'] two-tiered appellate process." *Blackledge v. Perry,* 417 U.S. at 28, 94 S.Ct. at 2103.

610 F.2d at 1007 (footnote omitted).

The rationale of *Pearce-Blackledge* is applicable to the case at hand. Our review leads us to conclude that the judge's remarks could reasonably have had a chilling effect on the exercise of the defendant's right to trial by jury. The court clearly implied to counsel that it might mete out a substantial prison sentence if Longval did not plead guilty; it pointedly referred to sentences imposed in a previous trial as examples of its capacity to do so. It matters not whether the trial judge actually

meant to issue such a threat; whether his remarks could create a "reasonable apprehension of vindictiveness" is the issue. *Cf. Lovett v. Butterworth,* 610 F.2d at 1007. With all due respect and deference to the special master and the Supreme Judicial Court of Massachusetts, we believe the words of the judge could well have been understood by defense counsel as a "plea or else" admonition.

In reaching this view, we recognize once more that "it is unfair to use the great power given to the court to determine sentence to place a defendant in the dilemma of making an unfree choice." *Worcester v. Commissioner of Internal Revenue,* 370 F.2d 713, 718 (1st Cir. 1966). The words of an outstanding federal trial judge bear repeating:

> The unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness. When a judge becomes a participant in plea bargaining he brings to bear the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not. A defendant needs no reminder that if he rejects the proposal, stands upon his right to trial and is convicted, he faces a significantly longer sentence. One facing a prison term, whether of longer or shorter duration, is easily influenced to accept what appears the more preferable choice. Intentionally or otherwise, and no matter how well motivated the judge may be, the accused is subjected to a subtle but powerful influence.

*United States ex rel. Elksnis v. Gilligan,* 256 F.Supp. 244, 254 (S.D.N.Y.1966) (footnote omitted). We readily accept the master's finding that the trial judge in this case acted with the best of intentions; but we think it clear that, viewed from the crucial perspective of the defendant, the judge's statements could reasonably have been understood as a threat.

A judge who participates in plea bargaining "is no longer a judicial officer or a neutral arbiter. Rather, he becomes or seems to become an advocate for the resolution he has suggested to the defendant." *United States v. Werker,* 535 F.2d 198, 203 (2d Cir.), *cert. denied,* 429 U.S. 926, 97 S.Ct. 330, 50 L.Ed.2d 296 (1976).

Under the circumstances, this case must be remanded for resentencing. That the Appellate Division reduced the sentences does not remove the unconstitutional taint. In reaching its decision, it did not address the constitutional issues and did not have the report of the special master. Thus its consideration of appellant's sentence was necessarily limited to the disparity of sentences alone, and could not serve to remove the taint given that disparity by the trial judge's remarks. There are no absolutes as to whether a remand should be to the original judge or to another, *O'Shea v. United States,* 491 F.2d 774, 778 (1st Cir. 1974). The nature of the particular situation may vary from case to case. Generally, however, it "is difficult for a judge, having once made up his mind, to resentence a defendant." *Mawson v. United States,* 463 F.2d 29, 31 (1st Cir. 1972). Where, as in the case at hand, there exists the possible appearance of vindictiveness, then the case should be remanded for resentencing by a different judge. This fosters the appearance of justice, even though the sentencing judge may be able to act impartially.

The writ of habeas corpus shall issue unless within sixty days the defendant is resentenced before a Massachusetts Superior Court Justice, other than the one who presided at his trial.