COMMONWEALTH vs. FRANK R. DAMIANO.

Suffolk.   September 14, 1982. — November 4, 1982.

Present: GREANEY, PERRETTA, & KASS, JJ.

*Practice, Criminal,* Plea, Sentence, Right to trial, Agreement between prosecutor and defendant. *Due Process of Law,* Right to trial, Plea, Agreement between prosecutor and defendant. *Constitutional Law,* Privilege against self-incrimination. *District Attorney. Judge.*

A criminal defendant's pleas of guilty to indictments charging sexual offenses against children were not, in the circumstances, coerced by the trial judge's involvement in the plea bargaining process, since there was no objective proof that the judge forced guilty pleas by putting the defendant on notice that he could expect more severe punishment if he insisted on a trial by jury. [618-623]

The imposition of concurrent life sentences on a defendant who had pleaded guilty to numerous indictments charging sexual offenses was not an impermissible vindictive response to the defendant's refusal to cooperate in an ongoing police investigation, where the defendant had made no timely claim that his refusal had a basis in his privilege against self-incrimination; nor was there any abuse of judicial discretion in the sentencing. [624-625]

INDICTMENTS found and returned in the Superior Court on May 17, 1977.

A motion for postconviction relief, filed on November 18, 1981, was heard by *McGuire,* J.

*Thomas G. Shapiro (Carolyn Grace* with him) for the defendant.

*Leonard J. Henson,* Assistant District Attorney (*Michael J. Traft,* Assistant District Attorney, with him) for the Commonwealth.

GREANEY, J.  On May 20, 1977, Damiano was arraigned on thirty-seven indictments charging him with unnatural sexual intercourse with, and abuse of, children under age sixteen.  On September 26, 1977, he offered pleas of guilty

to all the indictments before the judge of the Superior Court who had been assigned the trial (trial judge). This judge accepted his pleas to twenty-three indictments and sentenced him to twenty-three concurrent life terms. The remaining fourteen indictments were dismissed as duplicitous. On November 18, 1981, Damiano filed a motion pursuant to Mass.R.Crim.P. 30, 378 Mass. 900 (1979), challenging his convictions on the grounds that the pleas were coerced and the sentences imposed in violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution. Another judge of the Superior Court (motion judge) held an evidentiary hearing,[1] made findings of fact and rulings of law, and denied relief. Damiano has appealed.[2]

The motion judge found that between June 15 and 17, 1977, the prosecutor assigned to try the case advised Damiano's counsel that he would recommend consecutive life sentences if Damiano went to trial and was convicted on more than one indictment, but concurrent life sentences if Damiano pleaded guilty. On or about June 21, 1977, the prosecutor informed Damiano's counsel that a defendant faced with related charges might receive a suspended sentence because of his cooperation with the police investigation of the so called "Revere sex ring." On or about August 24, 1977, the trial judge advised the prosecutor and Damiano's counsel, in an unrecorded lobby conference, that if Damiano pleaded guilty he would not exceed the Commonwealth's recommendation without allowing withdrawal of the pleas. Later that same day, the prosecutor informed Damiano's counsel that he had changed his recommendation on a codefendant, one Peluso, from a life sentence to a term of fifteen to twenty-five years because of the latter's cooperation and that he would consider recommending a term of twenty-two to thirty years for Damiano

---

[1] In the interim, the trial judge had been appointed a judge of the United States District Court for the District of Massachusetts.

[2] Damiano is represented by new counsel on the appeal.

should he agree to assist the investigation. Damiano declined to provide information to the Commonwealth; the prosecutor reaffirmed his recommendation of concurrent life terms should pleas of guilty be entered. On or about September 14, 1977, at a second unrecorded lobby conference, the trial judge reiterated his intention not to exceed the prosecutor's recommendation in the event of a plea of guilty. The trial judge stated (as found by the motion judge) that "he was impressed with the candor and cooperation of the co-defendant . . . Peluso, whose plea [he] had . . . taken. [The judge] suggested that if the defendant were to cooperate with the Commonwealth by providing names and assistance, [he] would give such cooperation 'consideration' when sentencing the defendant. [Damiano's counsel] pressed the judge to substantiate what he meant by 'consideration,' and only at . . . defense counsel's urging, did the judge indicate that he had an eighteen to twenty year sentence in mind if defendant cooperated."[3] Damiano again declined to furnish information to the police. On September 26, 1977, he tendered his pleas of guilty.

The motion judge ruled that the pleas were voluntary, notwithstanding Damiano's claim that he had been coerced by the trial judge. He also concluded that the trial judge's comments indicating a disposition to impose a lesser sentence in the event the defendant cooperated could not have created the "reasonable apprehension of vindictiveness" described by the United States Court of Appeals for the First Circuit in *Longval* v. *Meachum*, 651 F.2d 818, 820-822 (1st Cir. 1981), vacated and remanded, 458 U.S. 1102 (1982).[4]

---

[3] The defendant argues that the quoted finding is erroneous. He contends that the evidence establishes that the trial judge flatly promised an eighteen- to twenty-year sentence and added that he would have to apologize to the public for imposing such a light sentence. The only witness at the hearing on the motion was Damiano's trial counsel. We have examined the transcript carefully and conclude that the finding has sufficient evidentiary support particularly in light of the witness' need to refresh his recollection about events that had occurred four years previously.

[4] The *Longval* decision was vacated subsequent to the motion judge's denial of the defendant's motion for postconviction relief. The reasons for

On appeal, Damiano's several arguments raise only two questions of merit: (1) whether the trial judge's involvement in the plea negotiations coerced the guilty pleas,[5] and (2) whether the sentence actually imposed was a vindictive response to Damiano's exercise of his right to remain silent rather than "cooperate" in an ongoing criminal investigation.

1. *The question of coercion.* It is fundamental that "a defendant, whatever his character, may not be punished for exercising his right to trial and, therefore, the fact that he has done so should be given no weight in determining his sentence." *Letters* v. *Commonwealth,* 346 Mass. 403, 405 (1963). It follows that a plea of guilty induced by a judge's threat to impose more severe punishment upon a defendant who chooses to exercise his constitutional rights is void. *Id.* at 406. This is not to say, however, that a judge's involvement in the plea bargaining process is a per se violation of a defendant's rights.[6] While we recognize that the permissible limits of such involvement by no means approach the latitude given to prosecutors,[7] the existence of a due process

the United States Supreme Court's disposition of the *Longval* case will be discussed in note 14, *infra.*

[5] No question is raised with respect to the prosecutor's offer to recommend a reduced sentence if Damiano chose to forgo trial and plead guilty. Recommendations of this sort are recognized as permissible negotiating tools by prosecutors in the plea bargaining process. See *Santobello* v. *New York,* 404 U.S. 257, 261 (1971); *Bordenkircher* v. *Hayes,* 434 U.S. 357, 363 (1978).

[6] The pleas in issue were entered prior to the effective date (July 1, 1979) of Mass.R.Crim.P. 12, 378 Mass. 866 (1979), and their validity is governed by common law and constitutional principles. We note, however, that although rule 12 is modeled after Fed.R.Crim.P. 11 (1975), and the A.B.A. Standards Relating to Pleas of Guilty § 3.3(a) and commentary at 72-74 (Approved Draft 1968), the black letter of the rule does not include the express prohibition against judicial involvement in plea bargaining which appears in the cognate Federal rule and the A.B.A. Standards. See, however, Reporters' Notes to Mass.R.Crim.P. 12, Mass. Ann. Laws, Rules of Criminal Procedure at 203 (1979), in light of *Aldoupolis* v. *Commonwealth,* 386 Mass. 260, 269 (1982).

[7] It is well-recognized that a judge's participation in the actual plea-bargaining process presents a high potential for coercion arising out of the

violation is established only by objective proof[8] that the judge forced a guilty plea by putting the defendant on notice that he could expect more severe punishment if he insisted on a trial by jury.

We find no basis for concluding that the trial judge coerced Damiano's pleas in the sense just described. The United States Supreme Court has acknowledged the legitimacy of plea bargaining and rejected the "notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process." Our cases have recognized that a certain degree of coercion (in the sense of psychological or emotional pressure) is endemic to any system which asks a person to forgo certain rights in order to be spared certain penalties. See *Commonwealth* v. *Leate*, 367 Mass. 689, 694 (1975); *Commonwealth* v. *Tirrell*, 382 Mass. 502, 510 (1981). In this context, "[t]he possibility that a greater penalty will result from a jury trial than from the entry of a guilty plea has not been found to infringe impermissibly on the right to a jury trial." *Commonwealth* v. *LeRoy*, 376 Mass. 243, 246 (1978), and cases cited. There is no basis to conclude that the bare fact of the

---

defendant's view of the judge as the party in control of the courtroom and the final arbiter of his fate. As noted in the commentary to § 3.3(a) of the A.B.A. Standards, *supra* at 73: "(1) judicial participation in the discussions can create the impression in the mind of the defendant that he would not receive a fair trial were he to go to the trial before this judge; (2) judicial participation in the discussions makes it difficult for the judge objectively to determine the voluntariness of the plea when it is offered; (3) judicial participation to the extent of promising a certain sentence is inconsistent with the theory behind the use of the presentence investigation report; and (4) the risk of not going along with the disposition apparently desired by the judge may seem so great to the defendant that he will be induced to plead guilty even if innocent." These reasons, and those discussed later in this opinion at n.13, suggest that the judge's role in a plea case should not stray beyond the limitations set out in Mass.R.Crim.P. 12.

[8] That a claim of coercion must be supported by facts appearing in the record and not based solely on a defendant's subjective beliefs or complaints has been settled in this Commonwealth. See *Commonwealth* v. *Tirrell*, 382 Mass. 502, 510-511 (1981).

communication to the judge of the sentencing alternatives being discussed by counsel could have had a coercive effect.

The trial judge's statement that he would not exceed the prosecutor's recommendation without first permitting Damiano to withdraw his pleas (a procedure subsequently approved by Mass.R.Crim.P. 12[c][2][A], 378 Mass. 868 [1979]), likewise could not have intimidated the defendant. This statement was merely informational and conveyed no suggestion that the trial judge had committed himself in advance to two sentences with the imposition of one or the other dependent upon Damiano's plea decision.

The trial judge's subsequent statement that he would impose a more lenient sentence if the defendant chose to cooperate could not have coerced the pleas. Damiano remained free at all times to reject the notion of cooperation (as he steadfastly did) and to insist upon having a jury trial. The risk of enhanced punishment because of a failure to cooperate remained the same whether Damiano chose a plea or a trial. Since that risk would not have been obviated by a decision to plead, it could not have unduly influenced Damiano's decision to admit his guilt. Moreover, nothing said by the judge about cooperation could have led Damiano to believe either that he could not get a fair trial because the judge thought a trial would be futile or that the judge would be biased against him at trial.

In sum, the criticized lobby conference did nothing more than crystallize several choices for Damiano which were intended to assist him in making an informed decision as to his plea. None of the choices imposed pressures beyond those normally affecting a defendant in his situation. See *Commonwealth* v. *Leroy, supra*; *Commonwealth* v. *Tirrell, supra*; *Commonwealth* v. *Mendez*, 8 Mass. App. Ct. 914, 915 (1979). There is no evidence that Damiano was peculiarly susceptible to these normal pressures, such that they might have exercised an unusual coercive effect upon him as an individual. Although we acknowledge merit in Damiano's characterization of the powerful influence a trial judge may exert on the mind of a criminal defendant, we

conclude that he was subjected only to normal pressures intrinsic to the plea bargaining process and that he was not affected by any special susceptibility to those pressures which would have left him "so gripped by fear . . . or hope of leniency that he did not or could not, with the help of counsel, rationally weigh the advantages of going to trial against the advantages of pleading guilty." *Commonwealth* v. *Tirrell*, 382 Mass. at 510, quoting from *Brady* v. *United States*, 397 U.S. 742, 750 (1970). See *United States ex rel. Robinson* v. *Housewright*, 525 F.2d 988, 990 (1975). See also *United States ex rel. Bullock* v. *Warden*, 408 F.2d 1326, 1330 (1969), cert. denied, 396 U.S. 1043 (1970); *Brown* v. *Peyton*, 435 F.2d 1352, 1356-1357 (1970), cert. denied, 406 U.S. 931 (1972); *Flores* v. *Estelle*, 578 F.2d 80, 85 (1978), cert. denied, 440 U.S. 923 (1979).

This conclusion is further supported by the trial judge's colloquy with Damiano to ascertain whether his pleas were made knowingly and voluntarily. See *Boykin* v. *Alabama*, 395 U.S. 238, 243-244 (1969); *Parker* v. *North Carolina*, 397 U.S. 790, 796-798 (1970); *Brady* v. *United States*, 397 U.S. at 748; *Commonwealth* v. *Morrow*, 363 Mass. 601, 603-605 (1973); *Commonwealth* v. *Taylor*, 370 Mass. 141, 143-145 (1976). The record of this hearing (which covers fifty-six transcript pages) indicates Damiano's awareness of his situation,[9] legal distinctions,[10] and available options. The judge gave the defendant a detailed and deliberative ex-

---

[9] Damiano was at the time a man of mature years. He possessed a high school education. There was no evidence of physical or mental impairments. He had previous experience with the criminal justice system and was on probation at the time of sentencing.

[10] For example, at one point Damiano responded to an inquiry by the trial judge as to whether he willingly and intentionally committed unnatural intercourse with one victim by stating, "I don't know how to answer that . . . your Honor. Because, see, I lack self-control. I have no control over my impulses, so I don't think I should say I did it willingly or intentionally." To the next question by the judge "Did you know what you were doing at the time?", Damiano answered "Yes." At another point, Damiano asked for a more precise definition of "force" as applied to the facts of one indictment.

planation of all his rights and the judge's sentencing function.[11] A factual basis was established for each change. Independent colloquy with the defendant's trial counsel furnishes additional objective proof that Damiano entered his pleas freely and voluntarily.[12] In short, the plea hearing reveals straightforward answers by the defendant to pertinent questions "in words consistent with understanding and voluntariness." *Commonwealth* v. *Taylor,* 370 Mass. at 145. See *Commonwealth* v. *Curry,* 6 Mass. App. Ct. 928 (1978); *Commonwealth* v. *Thomas,* 10 Mass. App. Ct. 922, 923 (1980). See also *Calabrese* v. *United States,* 507 F.2d 259, 260 (1st Cir. 1974).[13]

Finally, we have expanded our consideration of the case to assume that the recent decision in *United States* v. *Good-*

---

[11] The defendant acknowledged the discretionary range of the judge's sentencing power, and the fact that any recommendation by either the prosecutor or his counsel was not binding on the court. He had been made aware of the fact that the judge would not exceed the prosecutor's recommendation without giving him an opportunity to withdraw his pleas.

[12] Trial counsel had informed Damiano of all conversations in the lobby with the judge. Damiano's counsel stated at the plea hearing that it appeared to him that his client was pleading guilty freely and voluntarily and that he knew of no reason why the pleas should not be accepted.

[13] While the record demonstrates that the defendant's pleas were voluntary, we hasten to add that nothing said in this opinion should be construed as encouraging judicial participation in plea bargaining. By avoiding the practice a judge will (as explained in *United States* v. *Werker,* 535 F.2d 198 [2d Cir. 1976]): (1) obviate the chance that the defendant may be coerced into an involuntary plea out of fear that rejection of the judge's suggestion will mean the imposition of a more severe sentence after trial or decrease his chances of obtaining a fair trial; (2) keep himself out of the process of negotiating additional terms of a sentence he originally proposed; (3) prevent motions which seek recusal because the judge has become "steeped in the knowledge of [the defendant's] guilt and . . . has . . . expressed an opinion on punishment," *id.* at 204; and (4) assure finality by discouraging attempts by the defendant to recant his plea by collateral attack. The trial judge's suggestion here of a definite sentence in exchange for cooperation, had a tendency to reduce the effectiveness of any presentence report he might receive later, see now Mass.R.Crim.P. 28(d), 378 Mass. 898 (1979), and it triggered the fourth consideration by motivating the defendant, after pondering his fate for four years, to attack the pleas collaterally.

*win,* 457 U.S. 368 (1982), may be applicable to the facts. We conclude, for the reasons previously stated, that the chance of enhanced punishment after a jury trial or rejection of cooperation would not support a "presumption" of coercion based on a "'realistic likelihood of "vindictiveness,"'" *id.* at 384.[14]

---

[14] Vindictiveness and coercion are essentially different concepts. Vindictiveness is retaliation for rightful action taken in the past (e.g., the imposition of a heavier sentence upon a verdict of guilt than would have been imposed upon a plea of guilty). Coercion is the use of a threat to induce action. The two concepts have at least one feature in common, since one may attempt coercion by threatening to take action which, if taken, would be vindictive.

In *United States* v. *Goodwin, supra,* the United States Supreme Court addressed the use of presumptions to establish vindictiveness by prosecutors and judges against defendants who have exercised the right to resist or attack convictions by insisting on a jury trial. The Court held that in *North Carolina* v. *Pearce,* 395 U.S. 711 (1969), and *Blackledge* v. *Perry,* 417 U.S. 21 (1974), a reasonable likelihood of vindictiveness could be presumed from unexplained circumstances in which a defendant received a more severe sentence after retrial on appeal (*Pearce*), or in which he was subjected to a felony indictment upon his claim of trial de novo following conviction for a misdemeanor (*Perry*). In both cases, the presumption was justified by the "institutional bias inherent in the judicial system against the retrial of issues that have already been decided," 457 U.S. at 376, which made it likely that "the State might be retaliating against the accused for lawfully attacking his conviction." *Id.* at 378, quoting from *Bordenkircher* v. *Hayes,* 434 U.S. at 363. As pointed out in *Goodwin,* and in *Commonwealth* v. *Tirrell,* 382 Mass. at 506-510, these considerations are not applicable to the plea bargaining process where the defendant remains free to accept or reject any proposed disposition and still request a trial. Thus the plea bargaining process does not involve the need for a prophylactic "rule deterring abuse of the criminal process by 'vindictive' behavior by the judges or prosecutors," *id.* at 508. Instead, a plea bargaining case focuses on whether the plea that followed negotiations was intelligently and voluntarily made. In deciding *Goodwin,* the United States Supreme Court also stated that circumstances creating a "reasonable likelihood of vindictiveness" (457 U.S. at 384) would not warrant a presumption sufficient by itself to set aside a conviction. The Court restricted that relief to cases where a "'realistic likelihood of "vindictiveness"'" (457 U.S. at 373) existed which was left unrebutted by objective proof dispelling a vindictive motive. Since *Longval* v. *Meachum,* 651 F.2d 818 (1st Cir. 1981), appeared to have been decided under the

2. *The question of vindictiveness in the sentence.* Da-
miano argues that his sentences were imposed vindictively
in retaliation for his refusal to cooperate. The trial judge
undoubtedly considered the absence of cooperation as a
negative factor in his assessment of a proper sentence. Da-
miano contends that this amounts to vindictive retribution
for his exercise of his Fifth Amendment right to silence.

Although Damiano knew that the existence of coopera-
tion might be considered in sentencing, neither he nor his
trial counsel offered any explanation to the trial judge for
his silence. If Damiano "believed that his failure to coop-
erate was privileged, he should have said so at a time when
the sentencing court could have determined whether his
claim was legitimate." *Roberts* v. *United States,* 445 U.S.
552, 560 (1980). See *Commonwealth* v. *Wright,* 10 Mass.
App. Ct. 907, 907-908 (1980). The privilege against self-
incrimination "is not self-executing." *Roberts* v. *United
States, supra* at 559. "At least where the Government has
no substantial reason to believe that the requested dis-
closures are likely to be incriminating, the privilege may
not be relied upon unless it is invoked in a timely fashion."
*Ibid.* All pending charges against Damiano were being con-
cluded, and no indication exists that the prosecution was
holding back other charges. As a consequence, the defend-
ant had no reason to infer that the information sought
would further incriminate him. In the circumstances, the
trial judge was not under any burden to perceive an unin-
voked privilege against self-incrimination even though that
privilege, if reasonably grounded and timely claimed, may
have mitigated the sentence. Nor was the judge required to

"reasonable apprehension" standard, it was vacated and remanded for
reconsideration in light of *Goodwin.* See 458 U.S. 1102 (1982).

As can be seen from the foregoing discussion, the due process concepts
analyzed in *Goodwin* are generally inapposite to a claim of coercion leveled
at the plea bargaining process. Nevertheless, we have given the defend-
ant's contentions the benefit of the doubt, concluding that his appeal is
not materially aided by anything said in the *Goodwin* decision.

speculate on other reasons for lack of cooperation, which, if expressed, might have provided some extenuation.

The question remains whether "cooperation" may be considered upon sentencing. It clearly may. "Unless his silence is protected by the privilege against self-incrimination . . . the criminal defendant no less than any other citizen is obliged to assist the authorities . . . . By declining to cooperate, [a defendant] reject[s] an obligatio[n] of community life that should be recognized before rehabilitation can begin. . . . Few facts available to a sentencing judge are more relevant to the likelihood that [a defendant] will transgress no more, . . . and the degree to which he does not deem himself at war with his society." *Roberts* v. *United States*, 445 U.S. at 558. (Citations omitted.) The legal concept of vindictiveness is not implicated in a sentencing decision unless a defendant is punished for doing something he had a right to do. The trial judge could properly have considered Damiano's lack of cooperation in passing sentence. Moreover, it appears that the trial judge fairly considered all arguments of Damiano's trial counsel for alternative sentences and, in addition to the cooperation issue, grounded the sentence upon "the probation folder," Damiano's "history . . . which indicates, in addition to these offenses . . . a long familiarity with the law and violation of like offenses," and the gravity of the "conduct which calls for . . . punishment which will see that he is never put in a position to commit such acts again." Against this record, the imposition of concurrent life sentences is neither punitive nor an abuse of discretion.

The order denying the motion for postconviction relief is affirmed.

*So ordered.*