COMMONWEALTH vs. CHRISTOPHER JOHNSON.

No. 88-P-1204.

Suffolk.   June 7, 1989. — August 28, 1989.

Present: ARMSTRONG, KASS, & FINE, JJ.

Robbery. Armed Assault with Intent to Rob. Practice, Criminal, Sentence, Plea, Argument by prosecutor, Instructions to jury. Judge. Words, "Dangerous weapon."

At the trial of an indictment charging assault with intent to rob while armed with a dangerous weapon, the jury were warranted in considering whether, in factual context, a hairbrush found next to the spot where the defendant collapsed after having been shot by the son of the owner of the premises was a "dangerous weapon," where there was evidence that, on four prior occasions that the premises were held up, the robber, who was identified as the defendant, pointed a firearm at his victim; that during the course of the crime the defendant appeared to be armed in that he had his hand in his left jacket pocket, held about waist high, pointing away from him and demanded money; and that reasonable apprehension that the defendant was armed with a gun, as he had been on the previous occasions, provoked the owner's son to shoot the defendant. [747-749]

Although this court stated that participation by a trial judge in plea bargaining is to be discouraged, the imposition of concurrent nine to fifteen year sentences on a defendant who had chosen to exercise his right to receive the verdicts of a jury after the judge had offered him concurrent six to nine year sentences after the close of the evidence and final arguments of counsel was held not to be an impermissible vindictive response to the defendant's exercise of his rights, where the record did not show that the defendant was being punished for exercising his right to trial and the verdicts of a jury. [749-752]

At a criminal trial, any innuendo from the possibly suggestive remarks of prosecution witnesses with regard to previous arrests of the defendant was adequately neutralized by the judge's instructions to the jury. [752-753]

INDICTMENTS found and returned in the Superior Court Department on June 19, 1987.

The cases were tried before *Robert A. Mulligan*, J.

*Andrew Silverman*, Committee for Public Counsel Services, for the defendant.

*Jane A. Donohue*, Assistant District Attorney, for the Commonwealth.

KASS, J. To the cashier and night cook of the Dragon Inn Restaurant in Dorchester the defendant Johnson had become a familiar face. He had robbed the Dragon Inn five times and had attempted a sixth robbery within a four-month period. Shot and apprehended during the last visit, the defendant was convicted on five indictments of armed robbery and one indictment of armed assault with the intent to commit robbery. On his appeal Johnson protests that he was not armed on the sixth raid on the Dragon Inn's cash register; that the judge imposed a vindictively harsh sentence; and that veiled references by prosecution witnesses to previous arrests of the defendant were inadequately neutralized. We affirm.

1. *Whether the defendant was armed with a dangerous weapon on the occasion of the last assault*. On the first four occasions that the Dragon Inn was held up, the robber, who was identified as the defendant,[1] brandished a firearm. On the fifth occasion, which occurred at 9:30 P.M. on April 30, 1987, the robber appeared to be armed in that he had his hand in his left jacket pocket, held up about waist high, pointing away from him. He demanded money and received a little over $30. Later that night, at 10:45 P.M., the robber turned up again, similarly suggested a weapon in his pocket and demanded "all the money." After the earlier episode, the cashier, Robert Cheung, had called his landlord, Thomas Williams. Accompanied by his son, Williams entered the restaurant while the second holdup of the night was under way. Some struggle ensued, during the course of which the younger Williams shot and wounded the defendant.

No firearm was found on the defendant. Next to where he collapsed after having been shot, the police found a hairbrush.

---

[1] The first identifications had been made from photo arrays. There were also in-court identifications by Robert Cheung, the cashier of the restaurant, and by Cheond Mui Chan, the cook.

That is the dangerous weapon with which the defendant stands convicted of having been armed when he attempted the aborted robbery. It was open to the jury to find that the hairbrush had spilled from Johnson's pocket and that, when he attempted the holdup, he had grasped the hairbrush in his pocket so as to simulate a handgun. The defendant urges that a hairbrush cannot be the basis for a conviction of assault with intent to rob while armed with a dangerous weapon. G. L. c. 265, § 18(*b*).

It is not necessary that the object designated as a dangerous weapon be inherently dangerous, so long as that object, from the perspective of the victim, reasonably appears capable of inflicting bodily harm, and the accused intends the victim to be intimidated. *Commonwealth* v. *Tarrant*, 367 Mass. 411, 417 (1975) (a dog). *Commonwealth* v. *Nicholson*, 20 Mass. App. Ct. 9, 17 (1985) (toy gun). *Commonwealth* v. *Garafolo*, 23 Mass. App. Ct. 905, 907 (1986) (toy gun). To the cashier at the Dragon Inn, who had seen the defendant point a real gun on at least four occasions, the concealed hairbrush pointed at him reasonably represented "an objective threat of danger." *Commonwealth* v. *Tarrant*, 367 Mass. at 416. In *Commonwealth* v. *Howard*, 386 Mass. 607, 611 (1982), the court decided that a finger concealed in a pocket could not be defined as a dangerous weapon. Even if an accused said he was armed, if he did not, at the time of the offense, have "some instrumentality in his possession, there can be no conviction of robbery while 'armed with a dangerous weapon.'" *Ibid.*

The concurring Justice in *Howard* (O'Connor, J.), envisioned circumstances uncomfortably close to those we now consider in illustrating his skepticism about the object versus part-of-the-body differentiation. That standard, he observed, "distinguish[es] between a statement plus a finger in a pocket and a statement plus a pocket comb or a pen." *Id.* at 617. Yet there may be sound ground for fitting seemingly innocuous objects within the term "dangerous weapon" when that is how they are reasonably perceived. One of the reasons that an offense is aggravated if committed while armed with a dangerous weapon is the potential for sudden and violent reaction when objects are used in a way which makes a person appear

to be armed. *Commonwealth* v. *Slaney*, 345 Mass. 135, 140 (1962). *Commonwealth* v. *Henson*, 357 Mass. 686, 693 (1970). *Commonwealth* v. *Tarrant*, 367 Mass. at 415. *Commonwealth* v. *Carter*, 396 Mass. 234, 237 (1985). *Commonwealth* v. *Perry*, 6 Mass. App. Ct. 531, 535-536 (1978). See the cases assembled in *Commonwealth* v. *Davis*, 10 Mass. App. Ct. 190, 192-193 (1980), among which such every day items as a flashlight, a walking stick, a chair, a broomstick, a dog, a lighted cigarette, and lighter fluid were placed in the "dangerous" category as used.

This case handsomely illustrates that it is not just high altitude theory to suppose that an object which is dangerous or, as used, looks dangerous may ignite violence and harm.[2] Reasonable apprehension that the defendant Johnson was armed with a gun, as he had been on previous occasions, provoked Williams to produce his own weapon and to shoot Johnson, as well as to cause a melee and gunfire in a restaurant during business hours. Not only did the hairbrush produce an intended fear of harm, it fulfilled a dangerous weapon's consequential tendency to provoke a breach of the peace. We think the jury could consider whether, in factual context, the hairbrush was a dangerous weapon. The defendant's motion for a required finding of not guilty on the indictment arising out of the aborted robbery was, therefore, properly denied.

2. *Vindictive sentencing.* After the close of the evidence and final arguments of counsel there was a conference among the judge and counsel, some of it off the record. Immediately preceding his charge to the jury, the judge said:

"All right, I just want to put on the record that I made an offer to you, to your client relative to numbers six to nine. Six to nine is the number, and we'll put this on the record, and your client's rejected that."

---

[2] Another dramatic example is *Commonwealth* v. *Tatro*, 4 Mass. App. Ct. 295, 296-297 (1976), in which the defendant, by displaying a gun to the robbery victim, literally frightened him to death.

When the jury returned verdicts of guilty on all six indictments, the judge imposed concurrent nine to fifteen year sentences. The defendant argues that imposition of the more severe sentences after the defendant chose to go the entire distance to jury verdicts suggests a "reasonable likelihood of vindictiveness," *United States* v. *Goodwin*, 457 U.S. 368, 373 (1982), "unrebutted by objective proof dispelling a vindictive motive." *Commonwealth* v. *Damiano*, 14 Mass. App. Ct. 615, 623 & n.14 (1982).

Participation by a trial judge in plea bargaining, although not proscribed in Massachusetts,[3] is discouraged. See *Commonwealth* v. *Damiano*, 14 Mass. App. Ct. at 618-619 & n.7; Reporter's Notes to Mass.R.Crim.P. 12(b)(2), Mass. Ann. Laws, Rules of Crim. P. at 203 (Law. Co-Op. 1979); Smith, Criminal Practice & Procedure § 1212 (2d ed. 1983). As this case demonstrates, a judge's involvement in the process risks generating charges of coercion or vindictiveness. Given that risk, a judge should be particularly reluctant to engage in bargaining with the defendant after all the evidence has been received and the preponderance of the time and effort involved in a trial has been expended. That an action may not be favored, however, does not automatically make that action error.

Error enters the picture if a defendant is punished for exercising his right to trial and the verdict of a jury. *Letters* v. *Commonwealth*, 346 Mass. 403, 405 (1963). *Commonwealth* v. *Coleman*, 390 Mass. 797, 804 n.7 (1984). *Commonwealth* v. *Joseph*, 11 Mass. App. Ct. 879, 881 (1981). *Commonwealth* v. *Damiano*, 14 Mass. App. Ct. at 618. *Commonwealth* v. *Banker*, 21 Mass. App. Ct. 976, 978 (1986). That a defendant receives a stiffer sentence than was offered does not, by itself, betoken vindictiveness. See *Alabama* v. *Smith*, 109 S.Ct. 2201, 2206-2207 (1989); *Hitchcock* v. *Wainwright*, 770 F.2d 1514, 1519 (11th Cir. 1985) (en banc), rev'd on other grounds sub nom. *Hitchcock* v. *Dugger*, 481 U.S. 393 (1987). The willing-

---

[3] Compare Fed.R.Crim.P. 11, which had been read to prohibit any judicial role in plea negotiations. *United States* v. *Werker*, 535 F.2d 198 (2d Cir.), cert. denied sub nom. *Santos-Figueroa* v. *United States*, 429 U.S. 926 (1976). *United States* v. *Mack*, 655 F.2d 843 (8th Cir. 1981).

ness of the defendant to admit guilt, for example, is a proper factor in more lenient sentencing. American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty § 1.8 (Approved Draft, 1968), cited with approval in *United States* v. *Williams*, 459 F.2d 763, 768 (3d Cir. 1972); *Moody* v. *United States*, 497 F.2d 359, 363 n.4 (7th Cir. 1974); *Frank* v. *Blackburn*, 646 F.2d 873, 885-886 (5th Cir. 1980) (en banc), cert. denied, 454 U.S. 840 (1981).

Notably absent from this record is any expression by the judge of displeasure about Johnson's failure to accept the sentence offered him or that consequences would follow from that failure. In those cases in which a more severe sentence following a rejected plea bargain has been held violative of the constitutional right to trial, the common thread has been the offer of a more lenient sentence in a "plea or else" form. See *United States* v. *Stockwell*, 472 F.2d 1186, 1187 (9th Cir.), cert. denied, 411 U.S. 948 (1973) (defendant told he would receive higher sentence if he stood trial); *Longval* v. *Meachum*, 693 F.2d 236, 237 (1st Cir. 1982), cert. denied, 460 U.S. 1098 (1983) ("I strongly suggest that you ask your client to consider a plea, because, if the jury returns a verdict of guilty, I might be disposed to impose a substantial prison sentence. You know that I am capable of doing that because you know of the sentences in a previous trial."); *United States* v. *Crocker*, 788 F.2d 802, 808 (1st Cir. 1986) ("I think imposing upon the time and resources of the Court to try a case which should not be tried is an imposition which deserves consideration when it comes time for me to sentence and I will do so").

Here, as we have observed, there were no overtones of pressure. The sentences imposed were not harsh in terms of what the statutes permitted. They were less than the twenty to twenty-five years which the government recommended. During disposition proceedings the judge remarked that the defendant had committed repeated armed robberies; had been arrested; arraigned; and had robbed again. The reasons spelled out by the judge for his sentence pertained to the crimes and their effects, not to the defendant's refusal to plead guilty. At the

time of sentencing, the judge had sentencing recommendations and probation reports available. We think the indicia of objective and legally acceptable sentencing criteria far outweigh the one indicator of vindictive sentencing, i.e., that the sentence imposed was greater than the one offered for a plea.

3. *Possible innuendo from testimony about photographic identification.* Johnson complains that the prosecution informed the jury by innuendo of his prior arrests. During the introduction of photographs of Johnson identified by the Dragon Inn's cashier, the prosecutor and Detective Ingersoll made references to the effect that the photographs were mugshots. For example, when asked about the records in his custody, Ingersoll replied:

> "A collection of arrest records, and accompanying those arrest records are police photographs. Those photographs are placed into books, and one complete wall is assigned to a collection of books."

Some time later, defense counsel requested an instruction on the source of police photographs. The judge gave such an instruction while Detective Ingersoll was on the stand.

> "Mr. Foreman, ladies and gentlemen of the jury, you heard this witness testify about photographs shown to Mr. Cheung. You shall draw no inference adverse to the defendant by virtue of the fact that the police had access to a photograph of him.
> "There are many reasons why police departments have photographs of individuals. People apply for licenses. People apply for permits. People apply to become taxi drivers. People apply for all sorts of things. When they apply for those positions they must have their photographs taken.
> "You shall draw no inference adverse to the defendant by virtue of the fact that there was a photograph of him available to the police department."

This instruction more than neutralized any innuendo from the possibly suggestive remarks of prosecution witnesses. Compare the similar, though less detailed, instructions approved in *Commonwealth* v. *Pullum*, 22 Mass. App. Ct. 485, 489-490 (1986). We trust juries to follow limiting instructions of this kind. *Commonwealth* v. *Roberts*, 378 Mass. 116, 128 (1979). See also *Commonwealth* v. *Amirault*, 404 Mass. 221, 232 (1989). In view of the judge's careful instruction to the jury, we do not think any harm was done by prosecution references to a "portion" of a photograph and a "cut-down version of the original one."

*Judgments affirmed.*