NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1119

COMMONWEALTH

vs.

PEKINGS AZIWUNG.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a six-person jury trial in the Superior Court, the defendant was convicted of rape.[1]  Shortly after sentencing, the defendant moved for a new trial.  In this consolidated matter the defendant appeals from the conviction and from the order denying his new trial motion, arguing that he was coerced into waiving his constitutional right to a twelve-person jury, and that his counsel was ineffective for a variety of reasons.  We affirm.

Background.  We briefly summarize the trial evidence, reserving certain matters for later discussion.  At the time of the rape, the defendant and the victim were dating.  The victim was house sitting one weekend, and she invited the defendant

_____

[1] The jury acquitted the defendant on one count of strangulation or suffocation.

over to spend the night with her there.  At some point that evening, the victim and the defendant engaged in consensual sexual intercourse.  After this first sexual encounter, the defendant went to the bathroom.  The victim and defendant gave divergent testimony about what happened after the defendant returned from the bathroom.

The victim testified that she started feeling ill while the defendant was in the bathroom, and that when he returned, she told him that she did not want to have sex anymore.  According to her, the defendant responded that he "wasn't done," and he held her down, strangled her, and raped her.  By contrast, the defendant testified that when he returned from the bathroom, the victim performed oral sex on him, put a condom on him, and the two again engaged in consensual sexual intercourse.  At some point during either the first or second encounter, the defendant video recorded the victim on his phone.[2]

The victim allowed the defendant to stay the night, and, after he fell asleep, she looked through his phone.  On his phone, she found text messages that the defendant had sent to other women indicating that he was cheating on her.  The victim was upset by this discovery, and she confronted the defendant about it.  The victim drove the defendant home in the morning.

---

[2] It is undisputed that this video depicted consensual sex.

It is also undisputed that over the course of the following days, the defendant repeatedly contacted the victim "apologizing, saying the devil made him do it, and [that] he was drinking too much, and that he was really sorry, and he knew he did something really bad." On one occasion, he went to the victim's parents' house and cried in their driveway asking for forgiveness.[3]

Two days after the encounters, the victim went to the emergency room, where a registered nurse completed an evidence collection kit and sexual assault examination. During the examination, a condom was recovered from inside the victim's vagina.

Discussion. 1. Standard of review. We review the denial of a motion for new trial for a "significant error of law or other abuse of discretion," Commonwealth v. DiBenedetto, 458 Mass. 657, 664 (2011), and will only disturb the decision where it is "manifestly unjust or the trial was infected with prejudicial constitutional error." Commonwealth v. Imbert, 479 Mass. 575, 581 (2018), quoting Commonwealth v. Jenkins, 458 Mass. 791, 803 (2011).

---

[3] The victim's father recorded the defendant's apology and the video was admitted into evidence at trial and played for the jury.

2. _Right to a jury trial_. The defendant first argues that the denial of his motion for new trial should be vacated because he was denied his constitutional right to a fair trial; he contends that the waiver of his right to a twelve-person jury was not voluntary. More specifically, he asserts that he was coerced into waiving this right when the trial judge stated that he would "consider putting [the defendant] on house arrest" if the defendant consented to a six-person jury trial. Because we are not persuaded that there is a constitutional right to a twelve-person jury, and we conclude that even if such a right existed, the defendant's waiver of this right was knowing and voluntary, we affirm.

First, there is no Federal constitutional right to be tried by a jury of twelve.[4] See _Williams_ v. _Florida_, 399 U.S. 78, 102-

---

[4] The defendant erroneously relies on _Ballew_ v. _Georgia_, 435 U.S. 223, 229 (1978), and _Patton_ v. _United States_, 281 U.S. 276, 291-293 (1930), for the proposition that his Sixth Amendment right to be tried by a jury of his peers necessarily implies a right to a twelve-person jury. _Ballew_ does not support this argument; the court in that case held that "the purpose and functioning of the jury in a criminal trial is seriously impaired, and to a constitutional degree, by a reduction in size below _six_ members," not twelve. 435 U.S. at 239 (emphasis added). Similarly, the holding in _Patton_, although supporting the defendant's argument, was expressly overturned when the court held that a six-person jury was constitutional because "the fact that the jury at common law was composed of precisely 12 is a historical accident, unnecessary to effect the purposes of the jury system and wholly without significance 'except to the mystics.'" _Williams_ v. _Florida_, 399 U.S. 78, 102 (1970), quoting _Duncan_ v. _Louisiana_, 391 U.S. 145, 182 (1968) (Harlan, J., dissenting).

4

103 (1970). While it remains undecided whether there is a State constitutional right to be tried by a jury of twelve under art. 12 of the Massachusetts Declaration of Rights, see Opinion of Justices, 360 Mass. 877, 885 (1971), citing Williams, supra (six-person juries constitutional in District Courts, but constitutionality of six-person juries in Superior Court remains undecided), we need not decide that question today. This is because even assuming without deciding that defendants have a State constitutional or statutory right to a twelve-person jury in the Superior Court,[5] we conclude that in this case, the defendant validly waived that right. See Commonwealth v. Nicoll, 452 Mass. 816, 820 (2008). See also Mass. R. Crim. P. 19 (b), as appearing in 486 Mass. 1501 (2020).

The waiver of a right to a jury trial must be "knowing and voluntary." Commonwealth v. Bennefield, 482 Mass. 250, 256 (2019), citing Ciummei v. Commonwealth, 378 Mass. 504, 507

---

[5] Massachusetts statutes and rules reflect that twelve is the default number of deliberating jurors for criminal cases tried in the Superior Court; however, "[u]pon a finding of cause, the trial judge may impanel a lesser number of jurors." G. L. c. 234A, § 68. See Mass. R. Crim. P. 20 (d) (2) (selection of twelve jurors for deliberation from larger number that includes alternates). The defendant does not assert a violation of his statutory rights. Cf. G. L. c. 218, § 26A (specifying jury of six for District Court cases). See Commonwealth v. A Juvenile (No. 2), 384 Mass. 390, 394 (1981), citing G. L. c. 119, § 56 (e) ("The statutory right to a jury of twelve [is] a substantial right," and violations of that right require reversal, even in the absence of prejudice).

(1979).  In making this determination, the trial judge must engage in a colloquy with the defendant to ensure "that the defendant has conferred with his counsel about the waiver, and that he has not been pressured or cajoled and is not intoxicated or otherwise rendered incapable of rational judgment."  Id. at 256 n.4, citing Ciummei, supra at 509-510  "So long as a colloquy occurs, the sole focus of our review is whether the colloquy provided an evidentiary record on which the judge could find the waiver was voluntary and intelligent."  Commonwealth v. Hendricks, 452 Mass. 97, 107-108 (2008).

Here, the defendant himself first raised the possibility of waiving any right to a twelve-person jury trial.  The defendant and his counsel also signed two waiver forms asserting that the waiver was knowing and voluntary.[6]  Additionally, and perhaps most importantly, judges conducted three colloquies with the defendant regarding his waiver.  First, on October 21, 2020, a judge (pretrial judge) conducted a thorough colloquy on the record in which he informed the defendant of his "practical and potentially constitutional" right to a jury of twelve persons.[7]

---

[6] These forms were titled "Waiver of Right to be Tried by a Jury of 12 Persons," and "Defendant's Waiver of Jury of 12 and Consent to Jury of 6."

[7] The judge also inquired as to the defendant's educational, employment, and medical history; the extent of the consultation with his attorney; his understanding of the charges against him and potential penalties; and his understanding of the right that he was waiving.

Second, on November 3, 2020, the pretrial judge conducted another colloquy.[8]  Third, on the first day of trial, the trial judge asked the defendant about the two waiver forms, the two prior colloquies, and the defendant's current understanding of and willingness to waive any right to a twelve-person jury. During each of these colloquies, the defendant asserted that his waiver was being made knowingly and voluntarily.  Because the judges were permitted to rely on the defendant's assertions during the colloquies and on the waiver forms, we affirm their separate findings that the waiver was made knowingly and voluntarily.  See Commonwealth v. Hernandez, 42 Mass. App. Ct. 780, 785 (1997).

Furthermore, we reject the defendant's argument that he was coerced into waiving his right to a twelve-person jury.  The record makes clear that the pretrial judge's statement that he would "consider" house arrest only if the defendant consented to a six-person jury trial was a practical response to the realities of the COVID-19 pandemic, and not a threat of greater punishment (or, alternatively, a promise of more lenient treatment in exchange for the waiver).[9]  See Brangan v.

---

[8] This colloquy was more truncated than the first.

[9] At the time of the defendant's waiver, and as a result of the COVID-19 pandemic, all twelve-person jury trials had been continued indefinitely; on the other hand, six-person jury trials were still ongoing.  In these circumstances, the judge reasoned that if the defendant consented to a six-person jury,

7

Commonwealth, 477 Mass. 691, 701-702 (2017) (pretrial detention is not a form of punishment); Commonwealth v. Damiano, 14 Mass. App. Ct. 615, 619 n.8 (1982) ("a claim of coercion must be supported by facts appearing in the record and not based solely on a defendant's subjective beliefs or complaints").  Cf. Commonwealth v. Lebon, 37 Mass. App. Ct. 705, 706-708 (1994). Thus, we agree with the motion judge that the defendant's waiver was made knowingly and voluntarily, without coercion.

3.  Ineffective assistance.  To establish a basis for relief on a claim of ineffective assistance of counsel, the defendant must show that (1) counsel's conduct fell below the standard of an ordinary fallible lawyer, and (2) that shortcoming prejudiced him in some way.  Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  "[A]rguably reasoned tactical or strategic judgments" do not amount to ineffective assistance of counsel unless they were "manifestly unreasonable" when made.  Commonwealth v. Rondeau, 378 Mass. 408, 413 (1979), quoting Commonwealth v. Adams, 374 Mass. 722, 728 (1978). Where, as here, we discern no "significant error of law or other abuse of discretion" in the judge's rejection of the defendant's

---

this would allow for a more "prompt trial," and therefore "the burden of supervising [the defendant] would be relatively minimal."  Given the pretrial judge's determination that the defendant was otherwise not a good candidate for long-term pretrial release, the judge was only willing to consider house arrest in these limited circumstances.

8

ineffective assistance claims, we affirm.  Commonwealth v.

Forte, 469 Mass. 469, 488 (2014), quoting Commonwealth v. Grace,

397 Mass. 303, 307 (1986).

a.  Saliva in the condom.  The defendant first argues that

his counsel was ineffective because he failed to highlight

critical evidence that the victim's saliva was found inside the

condom that was recovered during the sexual assault examination,

and because he failed to call an expert to testify about this

evidence.  The defendant asserts that this evidence would have

made him appear more credible to the jury because it was

consistent with his version of events -- that the victim engaged

in oral sex with him during the second encounter before he put

on the condom and had consensual intercourse with her.  He

similarly asserts that the evidence would have made the victim

appear less credible because it was inconsistent with her

version of events -- that the defendant came back from the

bathroom, put on a condom, and raped her.  For several reasons,

we disagree with the defendant's characterization of the

evidence and conclude that it was reasonable for counsel not to

explore the saliva evidence further or to call an expert witness

to testify about the deoxyribonucleic acid (DNA) report.  See

Strickland v. Washington, 466 U.S. 668, 691 (1984) ("counsel has

a duty to make reasonable investigations or to make a reasonable

decision that makes particular investigations unnecessary").

9

First, it appears that counsel's failure to develop this evidence more thoroughly was reasonable because, despite the defendant's contention, the DNA report does not "clearly state[]" that the victim's saliva was found inside the condom. Rather, it states that "[a] female STR DNA profile was obtained" from the condom, and that this DNA profile matched the victim. In arguing that counsel had reason to investigate this fact further, the defendant relies solely on evidence that was introduced during trial, including the testimony of the forensic scientist who conducted the DNA analysis and a stipulation by the parties.[10]  Thus, where defense counsel had no reason to know about the potential presence of saliva in the condom before trial, we discern no error in counsel's failure to investigate that fact further.  See Strickland, 466 U.S. at 691 ("In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness [under] all the circumstances").  See also Wiggins v. Smith, 539 U.S. 510, 521-522 (2003).

---

[10] The parties stipulated that "[t]he evidence collection kit contained vaginal swabs, slides and clothing of [the victim], and a condom obtained as a result of a physical examination . . . [which] were examined and tested positive for the presence of saliva, sperm cells and seminal fluid protein."  The forensic scientist testified that saliva was found inside the interior of the condom.

10

Furthermore, even if defense counsel knew or should have known about the potential presence of saliva in the condom before trial, there was no error in his decision not to call an expert to testify about this fact.  "The decision to call, or not to call, an expert witness fits squarely within the realm of strategic or tactical decisions."  Commonwealth v. Henderson, 486 Mass. 296, 306 (2020), quoting Commonwealth v. Ayala, 481 Mass. 46, 63 (2018).  Here, the defendant has failed to show that the decision not to call an expert to testify about the DNA report was "manifestly unreasonable" when made.  Rondeau, 378 Mass. at 413, quoting Adams, 374 Mass. at 728.  There is no affidavit from trial counsel or from any prospective expert witness explaining their potential testimony about how the presence of saliva in the condom would be helpful to the defense.  See Commonwealth v. Alicea, 464 Mass. 837, 850-851 (2013) ("claim of ineffective assistance of counsel for failure to call an expert witness is generally doomed where [t]he defendant's claim is not supported by any affidavits to disclose the content of the omitted expert testimony" [quotation omitted]).[11]

---

[11] Because we find that there was no error, we do not reach the question of prejudice.  However, even if we did, we are not persuaded that the defendant was prejudiced because both the defendant's and the victim's versions of the events included oral sex at some point, so they are both at least potentially consistent with saliva being found inside the condom.

b.  Video evidence.  Next, the defendant argues that his counsel was ineffective because he did not realize until two days before trial that a video from the night in question depicted the second disputed sexual encounter,[12] as opposed to the first undisputed consensual encounter.  Before trial, counsel believed the video depicted the first consensual sexual encounter, and he moved in limine to introduce the video solely for impeachment purposes.[13]  However, on the second day of trial, counsel argued for the first time that this video actually depicted the second, disputed sexual encounter, and he moved to have it admitted as substantive evidence of the victim's consent.

Here, even assuming that counsel's failure to understand the significance of the video fell below the standard of an ordinary fallible lawyer, see Saferian, 366 Mass. at 96, we are not persuaded that the defendant was prejudiced by this error. The defendant was still able to argue that the video was of the second encounter through his own testimony, and through counsel's closing argument.  The video was also admitted into

---

[12] Counsel represented that he was made aware of this new information during a discussion with the defendant in preparation for trial.

[13] The video was relevant for impeachment purposes because the victim denied the existence of a sex tape during her Grand Jury testimony, but she can be seen in the video looking directly into the camera.

evidence and viewed by the jury.  The defendant has not made a

showing that an earlier appreciation of the significance of the

video would have bolstered his argument or credibility.[14]

c.  Defendant's text chains.  Next, the defendant argues

that his counsel was ineffective because he did not introduce

the defendant's text messages with other women into evidence.

He asserts the messages would have proven that he was cheating,

verified his account of the evening, and provided motive for the

victim to lie.  However, even assuming that trial counsel fell

below accepted standards in failing to introduce that evidence

(a point we do not decide), where the defendant's text messages

were cumulative of other admitted evidence, we are not persuaded

that the defendant was prejudiced by his counsel's failure to

introduce them into evidence.  See Commonwealth v. Don, 483

Mass. 697, 712 (2019) ("cumulative evidence . . . [is] unlikely

to sway the jury"); Breese v. Commonwealth, 415 Mass. 249, 252

(1993), citing Commonwealth v. Satterfield, 373 Mass. 109-115

(1977) (defendant must show that better work might have

accomplished something material for the defense).  Here, it was

undisputed that the defendant was cheating on the victim and the

---

[14] We reject the defendant's argument that a timeline could have
been created based on the video's timestamps because he does not
point to any evidence that could have been used to identify the
times at which any of the sexual contacts at issue here took
place.

victim herself testified that she was upset when she found out about his texting and calling other women.

d.  Psychiatric records.  Finally, the defendant argues that his counsel was ineffective because he failed to obtain access to the victim's psychological records from before the incident, which he asserts were relevant to her credibility and motive to lie.[15]  Specifically, the defendant takes issue with defense counsel's request that the court take no action on his motion to reconsider the denial of his motion for access to the victim's psychological records.  We see nothing manifestly unreasonable about counsel's decision in this regard.

To gain access to privileged mental health records, a defendant must show "a good faith, specific, and reasonable basis for believing that the records [would] contain exculpatory evidence [that was] relevant and material to the issue of the defendant's guilt."  Commonwealth v. Bourgeois, 68 Mass. App. Ct. 433, 436 (2007), quoting Commonwealth v. Fuller, 423 Mass. 216, 226 (1996).  "[M]ental health records are not relevant simply because they exist and a victim is referred to mental health services at around the time she first revealed . . . abuse."  Commonwealth v. Jones, 478 Mass. 65, 69 (2017), citing

_____

[15] The defendant argues that the victim's medical records were relevant to her credibility and motive to lie because she had a history of "self-mutilation, depression, alcoholism, and hyper-sexuality."

14

Bourgeois, supra at 437.  Here, we are not persuaded that the defendant would have been entitled to the victim's psychological records from before the incident because "[t]he motion's broad claims concerning the victim's lack of credibility as a result of mental health problems are entirely speculative and lack the specificity and reasonableness required" to gain access to the privileged records.[16]  Bourgeois, supra at 437.  See Commonwealth v. Vieux, 41 Mass. App. Ct. 526, 527 (1996), cert. denied, 520 U.S. 1245 (1997) (failure to pursue futile motion not ineffective assistance of counsel).

4.  Conclusion.  The judgment is affirmed.  The order denying the defendant's motion for new trial is affirmed.

So ordered.

By the Court (Hand, Hershfang & Brennan, JJ.[17]),

*[signature]*

Assistant Clerk

Entered:  February 7, 2024.

---

[16] To the extent the defendant argues that trial counsel erred by (1) failing to locate a witness that would have bolstered his case, (2) failing to object to the Commonwealth's offering of unauthenticated texts into evidence, and (3) failing to call a medical witness to testify about the lack of marks on the victim's body, we conclude that these claims do not rise to the level of appellate argument because the defendant does not cite to any authority in support of them.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).

[17] The panelists are listed in order of seniority.