## COMMONWEALTH *vs.* MICHAEL WESTBROOK.

No. 01-P-1512.

Suffolk. January 8, 2003. - August 1, 2003.

Present: DUFFLY, SMITH, & MASON, JJ.

*Assault with Intent to Rape. Evidence,* Hospital record, Privileged communication, Prior misconduct, Testimony before grand jury. *Privileged Communication. Grand Jury. Practice, Criminal,* Indictment.

At the trial of an indictment charging the defendant with rape, the judge did not err in denying the defendant's request to introduce in evidence the contents of hospital records, including a rape crisis counselor's notes of her interview with the victim, and in denying the defendant's request to cross-examine the victim as to her psychiatric history, where there was no evidence in the record or in the victim's testimony that lent credence to the defendant's theory that the victim, because of her psychological problems, was not able to perceive, recollect, and recall the incident in question; and where the relevant exculpatory evidence in the notes was presented to the jury through the testimony of several witnesses. [695-699]

At a criminal trial, the judge did not err in admitting in evidence the testimony of a police officer that he had picked up the defendant and had given him a ride to his home a week before the incident in question, where the officer's testimony served to explain why the police knew where the defendant lived, and where the testimony did not necessarily imply that the defendant had been involved in criminal activity. [699]

Error, if any, arising from a judge's denial of a motion to dismiss a rape indictment on the ground that the Commonwealth withheld from the grand jury exculpatory evidence regarding penetration did not prejudice the defendant, where it was clear from the trial jury's verdict convicting the defendant of the lesser included offense of assault with intent to rape that the jury did not believe that the defendant had penetrated the victim. [699-700]

INDICTMENT found and returned in the Superior Court Department on August 22, 1997.

A motion to dismiss was heard by *Carol S. Ball,* J., and the case was tried before *Charles T. Spurlock,* J.

*Thomas J. Iovieno* for the defendant.

*Stacy J. Silveira*, Assistant District Attorney, for the Commonwealth.

SMITH, J. A Suffolk County grand jury returned indictments against the defendant charging him with rape and indecent assault and battery on a person fourteen years or older. At the defendant's first trial, a jury failed to agree on a verdict, and a Superior Court judge declared a mistrial. After a second trial, the jury returned a verdict of guilty on the lesser included offense of assault with intent to commit rape. The jury also returned a guilty verdict on the indecent assault and battery indictment, but the judge allowed the defendant's motion and ordered that a not guilty finding be entered.

On appeal, the defendant claims the following errors: the trial judge improperly excluded the contents of the victim's hospital records, including a rape crisis counselor's notes, from evidence; the trial judge improperly allowed a police officer to testify to prior contact with the defendant; the motion judge committed error by denying the defendant's motion to dismiss the indictment on the ground that the Commonwealth withheld exculpatory evidence from the grand jury; and finally, that his trial counsel was ineffective. We affirm.

We recite in general outline the facts that the jury could have found from the evidence, reserving certain details for discussion in conjunction with specific issues raised.

On July 17, 1997, the victim met some friends at Revere Beach. Later that day, she and one of her friends walked to a nearby park where they both drank alcohol. While in the park, the defendant introduced himself and also drank some alcohol with them. When the victim and her friend returned to the beach, the defendant accompanied them.

Eventually, the victim decided to return to her apartment. The defendant offered to carry some items that she had brought to the beach, and she accepted his offer. The victim's roommate, Fred Hanscom, who is disabled, was in the apartment and confined to a bed in the living room. The victim was his caretaker.

The victim went into the bathroom, and the defendant followed. She asked him to leave. The defendant refused, and according to the victim, a struggle ensued during which the

defendant raped her. The victim yelled out to Hanscom to call the police because she was being raped. Hanscom was unable to make the call because the telephone was out of his reach.

The victim ran out of the bathroom, picked up the telephone, and dialed 911. Before she could complete the call, the defendant ripped the telephone from the wall. The victim picked up the telephone and slammed it on the defendant's head and fled the apartment, followed by the defendant. The victim ran to the home of a friend, grabbed a broken ski pole, and went back to her apartment. The defendant was not there.

Responding to the hang-up 911 telephone call, the police went to the apartment. Thereupon they brought the victim to a local hospital and then transferred her to the emergency rape crisis unit at Beth Israel Hospital (Beth Israel). There she was interviewed by a rape crisis counselor who made notes of that interview. A nurse prepared a rape kit of samples from the victim. No semen, blood, or saliva were found after an examination of those samples. Both a nurse and a police officer testified that the victim had told them that she was not sure if the defendant had penetrated her.

Later that day, the defendant was arrested in the East Boston section of Boston. He was bleeding from a cut on his forehead, which he said occurred when he fell on the side of a road. He denied that he had raped the victim, claiming that the victim was just mad at him because he would not purchase some "crack" cocaine from her.

At trial, the defendant's testimony as to how and when he met the victim and the events that occurred after she ran out of the bathroom matched the victim's testimony. The only differences between the defendant's testimony and the victim's related to what occurred in the bathroom.

According to the defendant, the victim introduced him to Hanscom, and he briefly talked with him. The victim and the defendant then went into the bathroom where the victim produced crack cocaine and both proceeded to smoke it. After they smoked all of the cocaine, the victim asked the defendant if he had any money. He produced two twenty-dollar bills. The victim grabbed the bills and told the defendant that the money was payment for the cocaine that he had smoked. According to

the defendant, he grabbed the bills from the victim and left the bathroom. The victim screamed to Hanscom to call the police. She ran out of the bathroom and started to dial 911. At trial, the defendant admitted that he grabbed the telephone out of the victim's hands and that she hit him in the head with the telephone. He also admitted that he had lied to the police about the source of the cut on his head.

Two police officers testified that they had not found any drugs or drug paraphernalia anywhere in the victim's apartment, including the bathroom, nor had they detected the odor of burnt crack cocaine in the apartment.

1. *Exclusion of the victim's rape counselor's notes.* The defendant claims that the trial judge committed error in denying his request to introduce in evidence the contents of the hospital records, including the rape crisis counselor's notes of her interview with the victim.[1] According to the defendant, the notes demonstrated that the victim had difficulty perceiving or recollecting the incident.

The protocol set forth in *Commonwealth* v. *Bishop*, 416 Mass. 169, 181-183 (1993), as modified by *Commonwealth* v. *Fuller*, 423 Mass. 216, 226-227 (1996), though applicable at trial, was not strictly followed because of a series of mistakes. Those mistakes, however, did not impact the result in this case.

Prior to the first trial, Beth Israel, by mistake, released the notes to the Commonwealth in response to the Commonwealth's request for the victim's medical records. The Commonwealth, in turn, but also by mistake, provided defense counsel with copies of those notes. Subsequently, Beth Israel filed a motion for return of the notes and a protective order, claiming that the notes were privileged. The defendant filed a stage one and stage two motion seeking in camera review of the notes pursuant to *Commonwealth* v. *Bishop*, 416 Mass. at 181-182. Under stage one, the judge was required to determine whether the hospital records and the rape crisis counselor's notes were privileged. A Superior Court judge determined that the records and notes

---

[1]The records included one page of the record of treatment of the victim at the first hospital to which she had been taken, as well as the rape crisis counselor's notes from Beth Israel. On appeal, the defendant focuses on the exclusion of the rape crisis counselor's notes.

were privileged under G. L. c. 233, § 20J. As to the defendant's request for an in camera review of the records by the judge under stage two, the more stringent standard as set forth in *Commonwealth* v. *Fuller*, 423 Mass. at 226-227, applied. Under that standard, the motion judge was required to consider whether the defendant, by motion, "has demonstrated a good faith, specific, and reasonable basis for believing that the records will contain exculpatory evidence which is relevant and material to the issue of the defendant's guilt." *Id.* at 226. The judge was aware that the hospital record and notes were already in the defendant's possession, and therefore accepted the defendant's proffer that the hospital records and notes contained exculpatory evidence.[2]

After a mistrial was declared in the first trial,[3] the defendant, prior to the second trial, filed a motion, pursuant to stages four and five of the *Bishop* protocol,[4] 416 Mass. at 182-183, to introduce the contents of the notes in evidence at the second trial.[5] In response, the Commonwealth filed a motion to exclude any reference to the notes or testimony about the notes from being entered in evidence. After argument, the trial judge allowed the Commonwealth's motion, thereby, at least by inference, denying the defendant's motion. The judge, however, did not provide any written decision setting out his reasons for the exclusion of the testimony and the notes. This was error

---

[2]Part of the "exculpatory evidence" was that the victim had told two people that she was not sure if the defendant had penetrated her.

[3]There is nothing in the trial record indicating, and we were not informed by counsel, whether the hospital record and notes played any role in the first trial.

[4]Under stage three of the *Bishop* protocol, 416 Mass. at 182, if the defendant meets his burden in stage two, the judge must provide the prosecutor and defense counsel access to the relevant material, so they may determine whether disclosure of information in the records to the trier of fact is necessary "to provide the defendant a fair trial." Here, though both the prosecutor and defense counsel already had copies of the notes, a judge during the first proceeding implicitly addressed stage three of the *Bishop* protocol by ordering release of the notes to defense counsel.

[5]*Commonwealth* v. *Fuller*, 423 Mass. at 226-227, did not change stages four and five of the *Bishop* protocol, 416 Mass. at 182-183. In stage four, the defendant bears the burden of demonstrating that the disclosure of the records in question to the trier of fact is necessary to a fair trial. *Ibid.* At trial, in stage five, the judge is to determine the admissibility of those records. *Id.* at 183.

because, in arriving at a stage four determination, "a judge [is required to] set forth in writing the reasons for the decision in a memorandum of decision." *Commonwealth* v. *Sheehan*, 435 Mass. 183, 187 (2001), quoting from *Commonwealth* v. *Bishop*, 416 Mass. at 183.

During trial, defense counsel inquired of the victim if she was aware of anything that affected her ability to perceive the incident on the day in question. The victim responded in the negative, and defense counsel, at sidebar, requested that he be allowed to inquire into the victim's psychiatric history, especially the fact that in the past the victim had heard voices. The judge denied the request.

On appeal, the defendant claims that the judge committed error in not allowing the contents of the notes in evidence and in denying his request to cross-examine the victim as to her psychiatric history. The Commonwealth argues that, in view of the defendant's statements to the police and his trial testimony, the notes and the victim's psychiatric history were not relevant. See *Commonwealth* v. *Pare*, 427 Mass. 427, 430-431 (1998).

To be considered relevant, "the evidence must have rendered the desired inference more probable than it would have been without it." *Commonwealth* v. *Copeland*, 375 Mass. 438, 443 (1978). See *Green* v. *Richmond*, 369 Mass. 47, 59 (1975). This is not a case such as *Commonwealth* v. *Fayerweather*, 406 Mass. 78, 81 (1989), where the complainant claimed to hear the voice of the defendant telling her to do things. In that case, the court held that such evidence could have made it more likely, in the jury's view, that the complainant did not accurately perceive the event in question. *Id.* at 82-83. That evidence, the court stated, "could have been helpful for the jury to determine whether the complainant was telling the truth or whether she had imagined the entire incident." *Id.* at 83.

We have examined the excluded records. The notes contained statements by the victim that she "hear[s] voices in her head but these are long-term and she can tune them out and not listen to the 'squawking.' " The notes also indicate that she had lived in foster homes and had been "sexually assaulted by different foster fathers." The notes also show that, as a result of the July 17 incident, the victim remembered "prior episodes of abuse."

Here, the voices that the victim heard were her own, and the voices told her that she could ease her own suffering if she killed herself. The voices were thus suicidal ideations, not auditory hallucinations. Contrast *Commonwealth* v. *Syrafos*, 38 Mass. App. Ct. 211, 216 (1995). There was simply no evidence in the record or the victim's testimony that "lends credence to the defendant's theory that the victim, because of her psychological problems, was not able to perceive, recollect, and recall the incident in question." *Ibid.* This is especially true because the victim's and the defendant's testimony largely mirrored each other, except as to the events that transpired in the bathroom.

Furthermore, the defendant's theory on appeal that the victim imagined or hallucinated that she had been raped is inconsistent with his statements to the police after the incident and his trial testimony. In his statements and testimony, the defendant stated that the victim had intentionally lied about the rape in retaliation for his refusal to purchase cocaine.

The defendant also refers to a statement in the notes that the victim stated that the rape brought back memories of prior instances of sexual abuse by her various foster fathers. However, there was no evidence to support the defendant's argument that the victim confused the July 17 incident with the prior sexual abuse by others. She testified clearly about the incident with the defendant. As we have already stated, the defendant's own testimony largely matched the victim's testimony. The fact that, as a result of the incident, the victim remembered prior abuse does not warrant the release of the contents of the notes. See *Commonwealth* v. *Hynes*, 40 Mass. App. Ct. 927, 929 (1996).

In addition, a nurse testified about the victim's confusion as to whether the defendant had penetrated her. See note 2, *supra.* A police officer also testified that the victim was not sure if the defendant penetrated her, and the victim admitted that she had given conflicting statements regarding penetration. Thus, relevant "exculpatory evidence" that was in the notes was presented to the jury. Though a judge, in making the stage four determination, is to "resolve any doubt . . . in the defendant's favor," *Commonwealth* v. *Bishop*, 416 Mass. at 183, in the circumstances here, the judge did not commit error in allowing

the Commonwealth's motion to exclude the contents of the notes and in refusing the defendant's request to question the victim about her psychiatric history.

2. *Police testimony.* The defendant filed motions in limine to exclude evidence of the defendant's prior bad acts which included an incident that occurred during the previous week. At a hearing on the defendant's motions, the Commonwealth agreed to introduce only evidence that the police had picked up the defendant and given him a ride to East Boston. Defense counsel agreed to this limitation. During the Commonwealth's case, a police officer, in addition to the permitted testimony, testified that the Revere police department had had prior dealings with the defendant concerning an incident at Revere Beach one week earlier. The defendant argues that the testimony created an inference that the defendant had been in trouble with the police.

Here, the police officer's testimony served to explain why, after the victim's reporting of the incident, the police officers went to East Boston to look for the defendant, i.e., that they knew where the defendant lived because they had driven him home one week earlier. Furthermore, the testimony did not necessarily imply that the defendant had been involved in criminal activity, especially since the officer testified that they had driven the defendant home (and not to the police station). The defendant was not arrested during that encounter with the police; the defendant had been given a courtesy ride. Defense counsel could have elucidated that point on cross-examination but chose not to do so. There was no error.[6]

3. *Motion to dismiss.* During the grand jury proceedings, the police officers testified that the victim had told them that the defendant had penetrated her during the assault. The victim testified at trial that the defendant had penetrated her. The statement that the victim had given the police on the day of the assault, however, was that the victim could not remember if the defendant had penetrated her. The presentation to the grand jury excluded this portion of the victim's statement.

---

[6]The defendant also claims his trial counsel was ineffective for agreeing to the limitation as well as for failing to object to the testimony. Because there was no error, there can also be no claim of ineffective assistance of counsel on this issue. See *Commonwealth* v. *Stroyny*, 435 Mass. 635, 652 (2002).

The defendant filed a motion to dismiss the indictment, arguing that if this exculpatory evidence had been presented to the grand jury it might have indicted the defendant on a lesser included offense to rape, or not at all. The motion judge denied that motion, stating that the evidence should have been presented to the grand jury, but it would not have so undermined the victim's credibility that the grand jury's decision to indict the defendant would have been affected.

By finding the defendant guilty of the lesser included offense of assault with intent to rape, it is clear that the jury did not believe that the defendant had penetrated the victim, because penetration is not an element of that crime. See *Commonwealth* v. *Oliveira*, 53 Mass. App. Ct. 480, 482 n.5 (2002). As such, even if there was error, there was no prejudice to the defendant. See *Commonwealth* v. *Garrey*, 436 Mass. 422, 440 (2002).

*Judgment affirmed.*