## COMMONWEALTH *vs.* PHILLIP BOURGEOIS.

No. 05-P-1619.

Worcester. September 20, 2006. - March 13, 2007.

Present: RAPOZA, C.J., LAURENCE, & GRAINGER, JJ.

*Evidence,* Production on demand, Privileged record, Medical record. *Privileged Communication. Practice, Criminal,* Assistance of counsel.

A Superior Court judge erred in granting the criminal defendant's motion for a new trial, based on trial counsel's alleged ineffectiveness in failing to seek pretrial production of certain privileged treatment records concerning the victim, where the defendant failed to demonstrate that trial counsel would have been successful had he tried to obtain those records, that is, the defendant failed in his burden to set forth with particularity some factual basis indicating how the privileged records were likely to be relevant and material to an issue in the case, and that an examination of those records would disclose exculpatory information material to the defendant's guilt. [435-439]

INDICTMENTS found and returned in the Superior Court Department on September 14, 2001.

The cases were tried before *Joseph M. Walker, III,* J., and motions for a new trial, filed on September 24, 2003, and for discovery, filed on September 10, 2004, were heard by him.

*Ellyn H. Lazar-Moore,* Assistant District Attorney, for the Commonwealth.

*Juliane Balliro* for the defendant.

RAPOZA, C.J. The defendant was convicted by a Superior Court jury of one count of rape of a child and five counts of assault and battery on the same child, his stepdaughter.[1] The sexual abuse occurred between 1993 and 2000, when the victim

[1]The defendant was acquitted of three rape charges alleging penile-vaginal intercourse, and convicted only of the count alleging digital rape. The judge determined that the defendant was not guilty on the count alleging dissemination of matter harmful to a minor.

was between seven and thirteen years old and resided with the defendant and the victim's mother.[2] The victim testified at trial in July, 2002, approximately two years after the initial disclosures.

With new counsel, the defendant filed a motion for a new trial in which he argued that his trial counsel was ineffective for his failure to press for the pretrial production of certain privileged treatment records concerning the victim. Along with that motion, the defendant filed another motion for the discovery of additional records that he claimed his attorney should have obtained for use at trial but did not. Both motions were allowed by the same judge who presided over the trial. The judge later denied the Commonwealth's motion for reconsideration, and this appeal followed.[3] Upon careful consideration of the record, we reverse the judge's orders.

*Background.* Approximately two months before trial, counsel obtained the victim's pediatric medical records. Also in his possession prior to trial was a report of the victim's evaluation performed in October, 2000, at the University of Massachusetts Memorial Children's Medical Center in the Child Protection Program Clinic (UMass evaluation). These particular records contained references to the victim's history of mental health issues which, according to the defendant, should have alerted trial counsel to potentially exculpatory evidence.[4]

In his motion for a new trial, the defendant specifically faulted trial counsel for failing to follow up with a stage two *Bishop-Fuller* motion requesting all of the victim's treatment records that related to an October 6, 2000, notation in the pediatric record indicating a referral to "emergency services at Herbert Lipton [Center]," a mental health treatment facility. See *Commonwealth* v. *Bishop*, 416 Mass. 169, 181-182 (1993);

---

[2]The victim first disclosed the abuse in March, 2000, to her mother, who did not believe her. She then told her stepmother, who repeated the allegations to the victim's father, who in turn informed the police. The victim then moved in with her father and stepmother.

[3]The defendant's direct appeal was stayed pending the outcome of the motion for a new trial and this appeal.

[4]Neither the pediatric medical records nor the UMass evaluation refer to any illegal drug use by the victim at or about the time of her disclosures or before trial.

*Commonwealth* v. *Fuller*, 423 Mass. 216, 223-227 (1996). The defendant argued further that, had trial counsel sought the production of the Lipton Center records, he would have learned from those records and others referenced therein that, at or about the time of the victim's disclosures of abuse and also during the period leading up to trial, the victim had attempted suicide, had a history of criminal and impulsive behavior, was failing school, and was abusing both alcohol and drugs.[5]

The defendant characterized such facts as amounting to "highly relevant and damaging information concerning [the victim's]" psychiatric and substance abuse history that could have provided "the ammunition he needed to impeach the testimony of both [the victim] and the only fresh complaint witness offered in the case[, the victim's stepmother]." Moreover, he claimed, as a result of trial counsel's oversight he was deprived of the opportunity to reveal, through expert testimony, that the victim was "an extremely troubled child struggling with a serious mental illness complicated by hallucinogenic drug use," in contrast to the Commonwealth's portrayal of the victim at trial.[6]

In support of his motion for a new trial, the defendant attached copies of the victim's pediatric record and the UMass evaluation. He also provided copies of the Lipton Center records and other materials that he apparently obtained from the victim's mother after the trial of this matter.[7] Also attached were several affidavits, including one affidavit that was signed by a board-certified psychiatrist.

*Discussion.* In order to sustain a claim of ineffective as-

---

[5]Although the defendant contended that the Lipton Center records would have provided him access to new information, a significant portion of those records merely supply more details concerning information included in the materials already in the defendant's possession. For example, the pediatric records indicate that the victim had made a suicidal gesture and that she had failed in school, while the UMass evaluation indicates that she had been admitted after suicidal ideation, that she had failed in school, and that she had started counselling.

[6]The defendant also argued that the Commonwealth withheld exculpatory evidence and that trial counsel was ineffective for failing to obtain affidavits from people who purportedly knew the victim's reputation for truthfulness, all claims that were rejected by the motion judge.

[7]The mother is married to the defendant and testified on his behalf at trial.

sistance of counsel, the defendant must show both that "there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer" and if so, that "it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Here, we conclude that the two-prong *Saferian* test was not met. The defendant did not establish with sufficient particularity how trial counsel could have satisfied the stringent *Bishop-Fuller* criteria based on information contained in the materials that were properly in the defendant's possession prior to trial.

The defendant's *Bishop-Fuller* proffer, as presented in his motion for a new trial and now restated on appeal, fails in one important aspect that was not addressed in the judge's memorandum of decision. The defendant essentially concludes, incorrectly, that trial counsel would have prevailed had he tried to obtain the Lipton Center records and other privileged materials referenced therein. Trial counsel cannot be faulted, however, for having failed to obtain such documents where they were not discoverable in the first instance. See *Commonwealth* v. *Oliveira*, 431 Mass. 609, 614 (2000), *S.C.*, 438 Mass. 325 (2002).

Under *Fuller*, to procure a pretrial inspection of privileged records such as those at issue here,[8] the defendant is required to show "a good faith, specific, and reasonable basis for believing that the records [would] contain exculpatory evidence [that was] relevant and material to the issue of the defendant's guilt." *Commonwealth* v. *Fuller*, 423 Mass. at 226. "By 'material evidence' we mean evidence which is not only likely to meet criteria of admissibility, but which also tends to create a reasonable doubt that might not otherwise exist." *Ibid.* Generalizations and unsubstantiated statements concerning a particular victim's credibility are not enough. See *Commonwealth* v. *Bishop*, 416 Mass. at 182, quoting from *People* v. *Gissendanner*, 48 N.Y.2d

---

[8]As the judge treated the records as privileged, and the parties do not contend otherwise, we treat them as such for purposes of this appeal and assume they would have met the requirements of stage one of the *Bishop-Fuller* protocol.

543, 549 (1979) (prohibiting "an unrestrained foray into confidential records in the hope that the unearthing of some unspecified information would enable [the defendant] to impeach the witness"). See also *Commonwealth* v. *Poitras*, 55 Mass. App. Ct. 691, 695-696 (2002).

The motion's broad claims concerning the victim's lack of credibility as a result of mental health problems are entirely speculative and lack the specificity and reasonableness required under the heightened *Fuller* standard.[9] See *Commonwealth* v. *Poitras, supra.* The mere fact of a victim's mental health referral at or about the time she first revealed the abuse, without more, does not amount to a "credible showing" under *Fuller. Commonwealth* v. *Fuller, supra.* See *Commonwealth* v. *Westbrook*, 58 Mass. App. Ct. 692, 698 (2003) (notations in rape victim's medical record of suicidal ideation properly excluded at trial where they did not imply inability to perceive, recollect, and recall).[10]

Here, the defendant's proffer does not provide a factual basis for demonstrating that the privileged materials mentioned in either the victim's pediatric record or the UMass evaluation were relevant and material to any issue in the case. For example, the defendant does not advance any specific, substantiated allegations concerning either the victim's bias or motive to lie or her stepmother's motive to downplay the victim's purported

---

[9]While the defendant also refers to the victim's possible drug abuse, there was no indication in the pediatric records or the UMass evaluation of any illegal drug use by the victim at or about the time of her disclosures or before trial.

[10]After oral argument in this case, the Supreme Judicial Court announced a new protocol for the pretrial inspection of third party records, including statutorily privileged records. See *Commonwealth* v. *Dwyer*, 448 Mass. 122, 139-147 (2006). While the new protocol "replaces" the five-stage *Bishop-Fuller* protocols, *id.* at 139, it nevertheless leaves intact protections for complaining witnesses and record holders by insisting on a judicial finding that the moving party has satisfied the clearly articulated standards of "relevance, admissibility, necessity, and specificity" set forth in *Commonwealth* v. *Lampron*, 441 Mass. 265, 269 (2004). *Commonwealth* v. *Dwyer, supra* at 145, quoting from *Commonwealth* v. *Mitchell*, 444 Mass. 786, 792 (2005). In our view, even under the new, less stringent protocol, which is to be applied prospectively to cases tried after the issuance of the opinion in *Dwyer* (and thus has no direct application here), *Commonwealth* v. *Dwyer, supra* at 147, the defendant has not met the threshold requirement for obtaining access to the records at issue here.

behavioral issues. He relies only on references contained within the pediatric records and the UMass evaluation, as noted above, and a generalized claim that such evidence would have aided the defense at trial in discrediting both witnesses, i.e., the victim and her stepmother.

Given our determination that the defendant would thus not have been entitled to an in camera inspection of the Lipton Center records, we need not decide whether such records would have been useful at trial had they been obtained. Having examined the records at issue, however, we are of the opinion that the records would not have helped the defendant. The references to various psychiatric and other problems the victim appeared to be experiencing all occurred at or about the time she revealed the abuse and reasonably could be viewed as a consequence of the defendant's abuse and the trauma of having to testify at trial, rather than as an indication of possible bias or motive to lie. See *Commonwealth* v. *Vinton*, 432 Mass. 180, 185 (2000) (reasonable to forgo introduction of "double-edged" sword evidence that had "potential to backfire on the defendant"). Moreover, even the judge noted, correctly, that the records proffered do not indicate any fabrication or vacillation on the victim's part in describing the sexual abuse.

As to the defendant's allegations concerning the victim's competency as a witness, nothing in those records implies that, because of drug abuse or psychological problems, she was not able to testify.[11] See *Commonwealth* v. *Westbrook, supra.* In any event, as the judge correctly noted, the jury were in a position to assess the victim's ability to testify. That they acquitted the defendant of some charges is an indication that they performed that function conscientiously.

In sum, the defendant failed in his burden to set forth with particularity some factual basis indicating how the privileged records were likely to be relevant and material to an issue in the case, and that an examination of those records would disclose exculpatory information material to the defendant's guilt. There being no basis for concluding that a *Bishop-Fuller* motion would

---

[11]The affidavit of the psychiatrist, based on his review of the victim's records, is not sufficient to alter our analysis.

have been successful, trial counsel's decision not to pursue it cannot constitute ineffective assistance of counsel. See *Commonwealth* v. *Vieux*, 41 Mass. App. Ct. 526, 527 (1996), cert. denied, 520 U.S. 1245 (1997) ("failing to pursue a futile tactic does not amount to constitutional ineffectiveness"). The judge thus erred in concluding otherwise.

The orders allowing the defendant's motions for a new trial and discovery are reversed and the convictions are reinstated.

*So ordered.*