## COMMONWEALTH *vs.* RICHARD SALINGER.

No. 06-P-1601.

Middlesex. September 11, 2009. - May 27, 2010.

Present: DUFFLY, GRAHAM, & FECTEAU, JJ.

*Constitutional Law,* Assistance of counsel. *Practice, Criminal,* Assistance of counsel, Appeal, New trial. *Rules of Appellate Procedure. Evidence,* School records, Medical record. *Rape.*

In a criminal matter, a single justice of the Appeals Court properly granted the Commonwealth's motion for an enlargement of time to file its notice of appeal from the allowance, by a Superior Court judge, of the defendant's motion for a new trial, where the Commonwealth noticed its appeal just one day late, presented a meritorious claim of error, and showed that the appeal furthered the efficient administration of justice insofar as a decision on appeal might obviate the need for another trial, and further, where there was no discernable prejudice to the defendant. [780-781]

A Superior Court judge erred in allowing a criminal defendant's motion for a new trial on charges of child rape and indecent assault and battery on a child under the age of fourteen, on grounds of ineffective assistance of counsel, where the record did not establish that the failure by his trial counsel to use the victim's school records, i.e., a college admission recommendation letter written by the victim's school guidance counselor, deprived the defendant of an otherwise available, substantial ground of defense, in that the letter provided no basis to call into question the victim's accusations or the defendant's convictions [781-783]; and where the record did not establish that the failure by his trial counsel to obtain and use the victim's psychiatric records (which were not reviewed by the judge) caused the defendant to be deprived of an otherwise available, substantial ground of defense, in that they were inculpatory rather than exculpatory [783-785].

INDICTMENTS found and returned in the Superior Court Department on April 14, 2005.

The cases were tried before *Peter M. Lauriat,* J., and motions for posttrial discovery and for a new trial were heard by him.

A motion to file a late notice of appeal was heard by *Cohen,* J., in the Appeals Court.

*Michael Adam Chinman,* Assistant District Attorney, for the Commonwealth.

*Max D. Stern* for the defendant.

GRAHAM, J. In June of 2006, after a three-day trial, a Superior Court jury convicted the defendant, Richard Salinger, on one count of child rape and five counts of indecent assault and battery on a child under the age of fourteen. He timely appealed his convictions.

Represented by new counsel, defendant filed a motion for a new trial under Mass.R.Crim.P. 30(b),[1] as appearing in 435 Mass. 1501 (2001), arguing that his trial counsel rendered ineffective assistance by failing to obtain and utilize certain school and psychiatric records of the victim to impeach her credibility[2]; the Commonwealth introduced evidence of multiple extrajudicial complaints by the victim, in contravention of the first complaint rule; the victim improperly was allowed to present irrelevant and prejudicial evidence of self-mutilation; and the prosecutor made improper and inflammatory remarks in his closing argument. After hearing, the motion judge, who was the trial judge, allowed the defendant's new trial motion on the basis that trial counsel was ineffective.

The Commonwealth filed an appeal, arguing that a new trial should not have been granted because the defendant failed to prove that any inadequate performance of trial counsel resulted in the deprivation of an otherwise available, substantial ground of defense. See *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). The defendant first contends that the Commonwealth's notice of appeal was untimely, that a single justice of this court erred in allowing that notice to be filed late, and that therefore this court lacks jurisdiction over the appeal. In addition, in a cross appeal he asserts he is entitled to a new trial based on the alternate grounds he had raised below in his rule 30 motion, which the judge specifically declined to address.[3]

1. *Facts.* We briefly recite the facts the jury reasonably could have found. The victim testified the defendant sexually abused

---

[1]Although the motion also purported to rely on Mass.R.Crim.P. 30(a), that portion of the rule is not at issue in this appeal.

[2]The defendant also filed a motion to stay the execution of his sentence pending the disposition of his motion for new trial, and a motion for posttrial discovery. Both motions were allowed by the Superior Court motion judge.

[3]The defendant's direct appeal from his convictions was stayed by a single justice pending resolution of his new trial motion and is not before us at this time.

her, on repeated occasions, when she was between the ages of six and twelve. He had met the victim, Nora, and her brother, Tyler,[4] at their local elementary school. The defendant became a friend to both children and their mother, who was divorced. Since the divorce, the children's father had ceased any involvement with them.

The defendant, a retired school teacher, grew to become a grandfather-like figure to the children. He often "babysat" for them while their mother was at work or otherwise away from the home. The defendant would read to Nora and Tyler while they were all in bed together. On one such occasion, the defendant moved his hand under a bedspread and touched Nora's breast and vaginal areas, over her pajamas. Believing her brother was unaware of this at the time, Nora made no mention of it to him or anyone else.

Over time, the defendant's conduct "progressed" to touching Nora under her clothing and groping her bare chest, bare vaginal area, and bare buttocks. He would "rub" his penis against her hip and clothed vaginal area. The defendant partially inserted his finger in Nora's vaginal opening. This usually happened when they were alone. Nora did not speak of this. She feared no one would believe her if she did. She also believed that she would be blamed for "tearing her family apart" if she spoke out.

The defendant ceased his abuse when Nora was twelve years old, when she no longer needed a sitter in her mother's absence. It was in her sophomore year of high school when Nora informed a close friend of the abuse. She did so in guarded terms, however, refusing to identify the perpetrator other than to describe him as a family friend or grandfather-like figure.[5]

Around that time, at age fifteen, Nora had recurring bouts of depression that led to episodes where she "cut" herself, using her fingernails, a knife, or scissors.

After graduating from high school, Nora moved out of the family home, as a result of a falling-out with her mother's new

---

[4] We use pseudonyms to refer to the victim and her brother. See G. L. c. 265, § 24C.

[5] Because the trial in this case postdated the decision in *Commonwealth* v. *King*, 445 Mass. 217 (2005), the victim's friend testified as the designated first complaint witness for the Commonwealth. The judge gave an appropriate limiting instruction before the jury heard this testimony.

husband. Ultimately, Nora, when she was eighteen, presented herself to a hospital where she was placed in a psychiatric ward for three days. She was released and referred to an outpatient program at McLean Hospital. With treatment and therapy, she ceased her cutting behavior. This occurred in the fall of 2004.

Later, in March of 2005, during a meeting with her mother, the defendant's friend Mary Doe (a pseudonym), and Doe's daughter-in-law, Nora disclosed the abuse. (Up to this time, the defendant had maintained a close presence within Nora's family.) The police were contacted. Nora recounted the sexual abuse in a videotaped interview conducted by the district attorney's office, a process referred to as a sexual abuse intervention network (SAIN) interview. See *Commonwealth* v. *Dwyer*, 448 Mass. 122, 125 n.3 (2006).

2. *Defense case.* The defense case centered on a fundamental premise: Nora's accusations were false and a recent contrivance. In his opening statement, on cross-examination, and in his closing argument, defense counsel sharply questioned her credibility.

Specifically, in his opening, counsel recited quite a detailed account of Nora's activities with the defendant, such as riding on a bus to New Hampshire for nights out for bingo, going to eat with him at her favorite restaurant, or joining him, with Doe's extended family, on vacation to Florida and North Carolina. With reference to these particulars, counsel gave context to Nora's love of the defendant, and the friendship he had with Nora's mother, which was later "shattered," according to counsel, when "[o]ut of nowhere" came the accusations of sexual abuse. Counsel indicated to the jurors that by the close of the evidence in the case, "there will be all kinds of reasons why you should not and will not buy into [Nora's] story."

During trial, at defense counsel's urging, the judge allowed the jury to watch a video recording of the SAIN interview. In his summation, counsel reminded the jury that, in her SAIN interview, Nora made no mention of ever having been digitally raped by the defendant.

The defendant did not testify. Nor did he call a witness to testify on his behalf. Defense counsel urged the jury to find that the victim's accusations were false, motivated by attention-seeking or jealousy of the defendant's female companion. With this backdrop, we turn to the parties' contentions.

3. *Request for dismissal.* The Commonwealth filed a notice of appeal from the order on the new trial motion on October 12, 2007, one day beyond the thirty-day period within which it could do so by right. See Mass.R.A.P. 4(b), as amended, 378 Mass. 928 (1979). Six months later, on April 18, 2008, the Commonwealth filed a motion with this court, under Mass.R.A.P. 14(b), as amended, 378 Mass. 939 (1979), asking that its late notice of appeal be accepted. A single justice allowed the motion and we consolidated the defendant's appeal from that order with the cross appeals on the merits of the new trial order.

In acting on a party's motion under Mass.R.A.P. 14(b),[6] for an enlargement of time to file a notice of appeal from a lower court order or judgment, a single justice may, within his or her sound discretion, grant relief "for good cause shown." See *Commonwealth* v. *Barboza*, 68 Mass. App. Ct. 180, 183 (2007). Good cause is the standard that must be met under rule 14(b), as compared to the "excusable neglect" standard that a party must meet under Mass.R.A.P. 4(c), as amended, 378 Mass. 928 (1979).[7] Though there is a general equivalence in meaning between these two standards in the civil realm, see, e.g., *Bernard* v. *United Brands Co.*, 27 Mass. App. Ct. 415, 418 n.8 (1989), the same does not hold true in the criminal setting. See generally *Commonwealth* v. *Trussell*, 68 Mass. App. Ct. 452, 454-460 (2007). Factors such as finality and public interest in the State's prosecution of those accused of crime point to a somewhat different calculus in the criminal context,[8] which is implicitly why rule 14(b) does not prohibit a single justice or appellate court from

---

[6]Rule 14(b) provides: "The appellate court or a single justice for good cause shown may upon motion enlarge the time prescribed by these rules or by its order for doing any act, or may permit an act to be done after the expiration of such time; but neither the appellate court nor a single justice may enlarge the time for filing a notice of appeal beyond one year from the date of entry of the judgment or order sought to be reviewed, or, in a criminal case, from the date of the verdict or finding of guilt or the date of imposition of sentence, whichever date is later."

[7]Rule 4(c) states in relevant part that "[u]pon a showing of excusable neglect, the lower court may extend the time for filing the notice of appeal by any party for a period not to exceed thirty days from the expiration of the time otherwise prescribed by this rule."

[8]"The public, whom the Commonwealth represents, 'has a substantial interest in prosecuting those accused of crime and bringing the guilty to justice.' " *Commonwealth* v. *Borders*, 73 Mass. App. Ct. 911, 912 (2009), quoting from

permitting the Commonwealth to file a late notice of appeal when warranted. See *Commonwealth* v. *Casimir*, 442 Mass. 1031, 1031 (2004) ("It is not too late for the Commonwealth to obtain leave, if warranted, to enlarge the time for filing a notice of appeal").[9] The single justice acted within her discretion in determining good cause had been shown for the requested relief. See *Commonwealth* v. *White*, 429 Mass. 258, 264-265 (1999)[10]; *Commonwealth* v. *Swartz*, 454 Mass. 330, 334 & n.3 (2009). The Commonwealth had caused it to be shown that its appeal, noticed just one day late,[11] presented a meritorious claim of error and that it also furthered the efficient administration of justice insofar as a decision on appeal might obviate the need for another trial. There is no discernible prejudice to the defendant. See *White, supra* at 265. Therefore, we decline the defendant's request to dismiss the Commonwealth's appeal.

4. *Motion for a new trial.* "The trial judge upon motion in writing may grant a new trial at any time if it appears that justice may not have been done." Mass.R.Crim.P. 30(b). "Whether an appeal is from the granting or the denial of a motion for a new trial, an appellate court will examine the motion judge's conclusion only to determine whether there has been a significant error of law or other abuse of discretion." *Commonwealth* v. *Grace*, 397 Mass. 303, 307 (1986). Special deference is afforded to a

*Commonwealth* v. *King*, 400 Mass. 283, 290 (1987). "Absent egregious misconduct or at least a serious threat of prejudice, the remedy of dismissal infringes too severely on the public interest in bringing guilty persons to justice." *Commonwealth* v. *Cinelli*, 389 Mass. 197, 210 (1983). See *Commonwealth* v. *Mason*, 453 Mass. 873, 877 (2009).

[9] The Commonwealth did pursue that avenue in a proceeding following the issuance of the opinion in *Casimir*, and a single justice of this court allowed the Commonwealth to do so. *Commonwealth* v. *Casimir*, 68 Mass. App. Ct. 257, 258 n.3 (2007).

[10] As the court observed in *White*, "the importance of the rights lost to the *defendant* should his motion for enlargement be denied is an appropriate consideration for a judge considering whether the defendant has shown 'good cause' " (emphasis supplied). 429 Mass. at 264. Similar reasoning should apply when the Commonwealth seeks enlargement.

[11] The fact that the Commonwealth's motion to enlarge was filed in this court six months later does not affect our analysis. Compare *White*, 429 Mass. at 264 ("The fact that more than two years have elapsed from the denial of the motion [appealed from] does not mean that an appellate court is precluded from granting the defendant relief, nunc pro tunc, if the notice [of appeal] has been filed within the time specified by rule 14[b]").

decision of a motion judge who was also the trial judge, as is the situation here.[12] See *Commonwealth* v. *Murphy*, 442 Mass. 485, 499 (2004). If a new trial is sought on grounds of ineffective assistance of counsel, a defendant is required to show (a) "behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer" and (b) that it "likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

The defendant alleged his trial counsel was ineffective based on a failure to (1) use Nora's school records, available to him under a prior subpoena, and (2) obtain her psychiatric records. He argued that these records, had they been used, would have supported an alternative explanation for Nora's accusations.

a. *School records.* The defendant complained of counsel's failure to use a particular school record: a 2002 letter from a school guidance counselor who had favorably recommended Nora for college admission. We do not agree that the letter could have helped the defendant in a significant way. The guidance counselor's letter was a classic type of "double-edged" proof, for it posed the potential to do more harm than good to the defendant's case.

Specifically, in her letter, the school guidance counselor described Nora in glowing terms: an "intelligent and determined young woman," who "has an immense love of learning" and "is the quintessential scholar" who "will be the ideal college student."

The guidance counselor was careful not to gloss over the fact that Nora's freshman year of high school "was particularly difficult." In making this observation, the guidance counselor added: Nora's brother, Tyler, a high school freshman also, had "stopped attending" school; a "certain amount of discord ensued at home *between her mother and her brother*" (emphasis supplied); and Nora felt " 'stuck in the middle and off to the side' at that time in her life." This is the portion of the letter that the

---

[12]On January 30, 2007, the judge ordered the production of the victim's psychiatric treatment records. Subsequently, the judge allowed the defendant's new counsel to examine, in camera, the victim's school records and her psychiatric records, which were maintained at the court under seal and a protective order. Ultimately, the judge allowed the defendant's counsel to use those records in support of the new trial motion.

defendant says would have aided his case. However, other than offering a highly complimentary picture of Nora's school record and her virtues of diligence, hard work, and perseverance, the counselor's letter provides no basis to call into question Nora's accusations or the defendant's convictions.

The guidance counselor explained how Nora had successfully managed to overcome her poor freshman record by attending three consecutive summer school terms. Nora formed good relationships with teachers and discovered a wide range of academic interests, including art and literature. Apart from her demonstrated classroom achievements, Nora participated in school drama productions and volunteer efforts in the community; drawing from this, the guidance counselor was led to offer these pointed observations:

> "Although I have had the pleasure of working with [Nora] as her counselor in her senior year only, it has been made clear to me by those who have worked with her throughout her four years at [high school], that [Nora] has matured from a passive adolescent to a responsible, pleasant and interesting young woman. She has been able to overcome hardships and to create a meaningful education for herself."

The judge ruled that counsel's failure to use the guidance counselor's letter had "deprived [the defendant] of an otherwise substantial ground of defense." The record does not support that conclusion.[13] Counsel's failure to use the letter, even if not by design, cannot be decried, with hindsight of the jury's verdict, as constituting ineffective assistance.[14]

b. *Psychiatric records.* Nor does the record support the judge's conclusion that counsel's failure to obtain and use the victim's psychiatric records amounted to ineffective assistance.

---

[13]At best, the letter was cumulative of evidence adduced at trial, and, as such, not a proper basis for ordering a new trial. See *Commonwealth* v. *Pena*, 455 Mass. 1, 22 (2009).

[14]Trial counsel's performance is not appraised to determine whether or not, in hindsight, he or she "might have done things differently and perhaps more effectively," rather we look to whether counsel "provided representation commensurate with that of an 'ordinary fallible lawyer.' " *Commonwealth* v. *Shanley*, 455 Mass. 752, 771-772 (2010), quoting from *Commonwealth* v. *Saferian*, 366 Mass. at 96. We are satisfied counsel did so here.

Despite not having reviewed them himself, the judge ruled that the failure to use the psychiatric records necessitated a new trial. In so ruling, the judge noted that "Salinger and the Commonwealth *appeared* to agree on the substance of the records" (emphasis supplied). The judge's observation is not borne out by the transcript of the hearing in question; the transcript reflects the fact that the Commonwealth took exception with and sharply contested the defense theory as to why Nora was hospitalized in the fall of 2004.

The defendant said the hospitalization was due to the fact that Nora had ingested two vicodin, not her prescribed dosage, in an apparent suicide attempt. On the other hand, the Commonwealth asserted Nora had presented treating medical personnel with depression issues that had led her to cut herself more frequently. Without having reviewed them, the judge decided the psychiatric records "appear to cast doubt on some of [her trial] testimony." Quoting directly from the defendant's memorandum, the judge evidently accepted the defense claim made therein that counsel could have used certain information in those records, such as the reference to Tyler's alleged physical and emotional abuse of his sister, to support the defense claim that Nora's accusations were driven by attention-seeking in the context of family strife.

Having examined the psychiatric records, we conclude they are not exculpatory. Rather, they are inculpatory and support the Commonwealth's case. The psychiatric records memorialize Nora's report to medical personnel of the fact that she had been sexually abused by her babysitter, between the ages of six and twelve, describing the sitter as a family friend who remained in close contact with her mother.[15] This is a pointed reference to the defendant.

The psychiatric records do not indicate that Nora's depression or "cutting" behavior existed prior to the events that gave rise to the defendant's charged crimes; thus, if these records had been introduced at trial, the Commonwealth would likely have used them to show inferentially that any debilitating condition experienced by Nora was the likely result of her being sexually abused by the defendant, starting at a tender age and up to her early teenage years. See *Commonwealth* v. *Bourgeois*, 68 Mass.

---

[15]There are at least seven separate references to Nora's reporting to medical personnel that she had been sexually abused by a babysitter.

App. Ct. 433, 438 (2007).[16] Compare *Commonwealth* v. *Baxter*, 36 Mass. App. Ct. 45, 48-52 (1994) (records of complainant's pre-existing psychiatric condition admissible to show impairment of her ability to perceive or recall the subject events).

The defendant has not made a convincing showing that the psychiatric records would have materially aided his defense. See *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). He has not shown how the records are anything other than cumulative proof of the victim's much described emotional troubles, which she experienced in her middle-to-late teenage years, *after* the abuse ended. See *Commonwealth* v. *Brown*, 71 Mass. App. Ct. 743, 747 & n.8 (2008). This was a topic the jury was well acquainted with as a result of effective work of trial counsel for the defendant.

Moreover, we have no doubt the resulting failure to use the records at trial did not cause the defendant to be deprived of an otherwise available, substantial ground of defense. See *Commonwealth* v. *Saferian*, 366 Mass. at 96. A lawyer, in the shoes of trial counsel, would recognize the victim's psychiatric records posed a grave risk to the defendant's case if the strong inculpatory material contained therein, pointing to him as the perpetrator of the charged sexual abuse, were brought to the jury's attention. The failure to use the psychiatric records did not amount to ineffective assistance. This is one of those "rare" instances where reversal is required to correct an abuse of discretion. *Commonwealth* v. *Schand*, 420 Mass. 783, 787 (1995). See *Commonwealth* v. *Caillot*, 449 Mass. 712, 713 (2007).

Accordingly, we affirm the order of the single justice allowing the late filing of the Commonwealth's notice of appeal, and vacate the order allowing the defendant's motion for a new trial. The case is remanded to allow the trial judge to consider the remaining, unaddressed grounds in the defendant's motion for a new trial.

*So ordered.*

[16]As we stated in *Bourgeois*, "[t]he references to various psychiatric and other problems the [abuse] victim appeared to be experiencing all occurred at or about the time she revealed the abuse and reasonably could be viewed as a consequence of the defendant's abuse and the trauma of having to testify at trial, rather than as an indication of possible bias or motive to lie." 68 Mass. App. Ct. at 438.