Following a jury trial in the Superior Court, the defendant was convicted of two counts of rape of a child aggravated by an age difference of greater than ten years, in violation of G. L. c. 265, § 23A(b ), and one count of statutory rape as a lesser included offense of forcible rape of a child, in violation of G. L. c. 265, § 23.[2] On appeal, he argues that his pretrial motion for inspection of certain psychiatric records relating to the treatment of the victim should have been allowed. He also contends that the trial judge erred by admitting testimony regarding the defendant's prior bad acts; and violated his right to a public trial by holding an in camera hearing, pursuant to G. L. c. 233, § 21B (rape shield law), to determine the admissibility of evidence relating to the victim's prior sexual relationships. As regards the latter two claims, the defendant further contends that trial counsel provided ineffective assistance of counsel for failing to timely object. We affirm.
Background. We summarize the evidence presented at trial. The victim, whom we shall call Sally, was thirteen years old and was attending middle school at the time the crimes were committed.[3] She lived with her family in New Bedford and was dating a schoolmate, Patrick.[4] The two were sexually active and Sally's parents did not approve of the relationship.[5] On the evening of January 27, 2012, Sally ran away from home and went to Patrick's house, but he was not there. Sally then walked around the town for a few hours until she met a man who offered her a place to stay. The man, who was never identified, told Sally he had a friend, later identified as the defendant, who "hung out with people her age" and that she could stay with him. The man arranged for Sally to meet the defendant in a parking lot. Eventually, the defendant drove Sally and another man, Harold Vega, to his apartment where Sally spent the next two days. The defendant was forty-five years old and Vega was twenty-two. Sally was given alcohol and drugs[6] after which she was raped by both men. First, Vega forced Sally to have sexual intercourse while the defendant was in another room playing a video game. Later that night, Sally found herself lying naked on the defendant's bed. She felt the defendant's penis in her vagina; she then felt the defendant having oral sex during which he inserted a vibrator in her vagina. Vega assaulted Sally a second time before Sally fell asleep.
Sally, who was scared that the defendant and Vega would hurt her, remained at the defendant's home. On the following morning, Joseph,[7] a schoolmate whom Sally recognized but did not know well, arrived at the apartment. Joseph testified that he went to the defendant's home often to play video games and smoke marijuana. He and Sally spent Saturday night at the defendant's apartment. On Sunday afternoon, when it came time for Joseph to go home, he took Sally with him to "save" her and "get her away from" the defendant and Vega.
Sally spent Sunday night at Joseph's home and was driven to school by Joseph's mother on Monday morning. Sally went to the principal's office and her parents were called. When Sally's mother arrived, it was apparent to her that Sally was not "fully with it" and she took Sally to a crisis center and then to St. Luke's Hospital where she refused to undergo a "rape kit" examination because, as she explained at trial, she was embarrassed and didn't want anyone to know what had happened. Thereafter, Sally was taken to Bournewood Hospital, a psychiatric facility, for further evaluation. Approximately one year later, while in a community-based acute treatment facility, Sally disclosed that she had been raped. She then reported the incident to the police and identified the defendant from a photographic array.
The defendant, through cross-examination and argument, presented a different version of events. He acknowledged that Sally had been at his apartment, but maintained that Sally was not credible and that she had fabricated allegations of rape in order to protect Patrick. He claimed that Vega, who had pleaded guilty to an indictment charging him with raping Sally, was the sole perpetrator. Vega, who testified for the Commonwealth, stated that Sally and the defendant were in the defendant's bedroom and that he heard Sally giggling, but he did not observe any sexual activity.
Discussion. 1. Psychiatric records. Prior to trial, pursuant to Mass.R.Crim.P. 17(a)(2), 378 Mass. 886 (1979), the defendant moved for the production of records related to Sally's treatment at the Bournewood Hospital. In an affidavit submitted in support of the motion, defense counsel stated that the victim was transferred from St. Luke's Hospital "to Bournewood Hospital for 'psychiatric evaluation and hospitalization,' " and that he believed "the requested materials bear on the probability that the complainant has a motive to lie about the alleged abuse." During a hearing on the motion, defense counsel argued that the records would reflect that Sally was transferred to Bournewood Hospital because "she was suffering ... some altered mental state and mood disorder which certainly very well could have to do with based on the facts of this case." Counsel further argued that "[s]he may have said things to the psychiatrist about this case that could help the defendant." The motion judge denied the motion, concluding that defense counsel's representation was insufficient to meet the threshold requirements of Commonwealth v. Dwyer, 448 Mass. 122, 141-142 (2006).[8]
It is well settled that "[p]otential relevance and conclusory statements regarding relevance are insufficient to satisfy Dwyer's requirements." Commonwealth v. Labroad, 466 Mass. 1037, 1039 (2014), quoting from Commonwealth v. Lampron, 441 Mass. 265, 269 (2004) (internal citation and quotation marks omitted). Instead, "a defendant must make a factual showing that the requested documents have a 'rational tendency to prove [or disprove] an issue in the case.' " Id. at 1038, quoting from Lampron, supra at 269-270. The defendant bears the burden to "set forth with particularity some factual basis indicating how the privileged records were likely to be relevant and material to an issue in the case, and that an examination of those records would disclose exculpatory information material to the defendant's guilt." Commonwealth v. Bourgeois, 68 Mass. App. Ct. 433, 438 (2007). "Generalizations and unsubstantiated statements concerning a particular victim's credibility are not enough." Id. at 436. We agree with the motion judge, that the fact that Sally "may have said things to the psychiatrist about this case that could help the defendant" was insufficient to satisfy the defendant's burden.[9]
This case is more similar to Commonwealth v. Bourgeois, supra, than Commonwealth v. Labroad, supra, upon which the defendant relies. Here, as in Bourgeois, the basis for requesting the records was primarily the fact that Sally was hospitalized. In the absence of any claim that Sally made any relevant statements while receiving treatment at Bournewood, the defendant's request was unreasonable. Accordingly, the judge did not abuse her discretion when she denied the motion. See Lampron, supra at 271, citing Commonwealth v. Wanis, 426 Mass. 639, 642 (1998) ("whether documents should be produced prior to trial is reserved to [the] sound discretion of the trial judge").
2. Prior bad act evidence. The defendant argues that Joseph's testimony, that he took Sally to his house because he wanted to "save" her from the defendant and Vega, amounted to prior bad act evidence which should have been excluded. We disagree. First, the testimony at issue did not refer to any specific bad act. Second, even if we were to assume that Joseph's testimony tended to establish the defendant's bad character, it could not have created a substantial risk of a miscarriage of justice because it was cumulative of other admissible evidence from which the jury could readily infer that the defendant's apartment was not a "safe" place for a thirteen year old teenager. See Commonwealth v. Beneche, 458 Mass. 61, 76 (2010) ; Commonwealth v. Carriere, 470 Mass. 1, 16 (2014) ; Commonwealth v. Iago I., 77 Mass. App. Ct. 327, 333 (2010). Contrast Commonwealth v. Anestal, 463 Mass. 655, 673 (2012). Given our conclusion, trial counsel was not ineffective for failing to object to the challenged testimony.
3. Public trial right. Prior to trial, the defendant filed a motion in limine seeking permission to introduce into evidence specific instances of sexual conduct by Sally. The Commonwealth opposed the motion on the ground that the proposed testimony was inadmissible under the rape shield law. The motion judge held an evidentiary hearing on the proposed testimony. Before the hearing began, the judge closed the court room pursuant to the statute, which specifically provides for an "in camera hearing." G. L. c. 233, § 21B. Although he did not object at the time, the defendant now claims that he is entitled to a new trial because the closure of the court room violated his right to a public trial. He also contends that trial counsel was ineffective for not objecting to the closure.
As the Commonwealth concedes, notwithstanding the provision of the statute requiring an in camera hearing, "the public trial right attaches to a rape shield hearing." Commonwealth v. Jones, 472 Mass. 707, 725 (2015). In Jones, a case decided after the trial in this case, the Supreme Judicial Court held that, "before the courtroom properly may be closed during a rape shield procedure, the trial judge must conduct an individualized analysis consistent with the constitutional requirements set forth in [ Waller v. Georgia, 467 U.S. 39 (1984) ]." Id. at 729. The judge in this case did not follow this procedure and, as we have noted, defense counsel did not object. In these circumstances, the defendant has waived his claim of error regarding the closure of the court room and may only claim that defense counsel was ineffective for having failed to object. Id. at 733. Accordingly, to prevail, the defendant must demonstrate that a substantial risk of a miscarriage of justice arose from the absence of an objection. Ibid. We see no basis for concluding that such a risk exists and, therefore, the defendant is not entitled to a new trial on this ground. See Commonwealth v. Vargas, 475 Mass. 338, 358 (2016) ("The defendant has not proffered any substantive grounds on which the closure of the court room during [the rape shield hearing] would have resulted in any effect on the judgment in the case, and therefore failed to show prejudice arising from counsel's failure to object."
Judgments affirmed.

At the close of the evidence, the judge allowed the defendant's motion for a required finding of not guilty on one count of forcible rape of a child. The jury acquitted the defendant of furnishing alcohol to a minor.

Sally was sixteen when she testified at trial.

A pseudonym.

Sally's parents had obtained a restraining order against Patrick, but he continued to see Sally.

Sally testified that the alcohol and drugs made her feel "[v]ery off" and "[c]ompletely out of it."

A pseudonym.

In Dwyer, supra at 139, the Supreme Judicial Court "announce [d] ... a new protocol" grounded in Mass.R.Crim.P. 17(a)(2), and Commonwealth v. Lampron, 441 Mass. 265 (2004) (Lampron ), "that shall apply in every criminal case ... where a defendant seeks pretrial inspection of statutorily privileged records of any third party." The court reiterated "that the defendant must 'make a factual showing that the documents sought are relevant and have evidentiary value[,]' " id. at 142, quoting from Lampron, supra at 269, and left unchanged Lampron's requirements that a defendant must show (1) "that no other source likely exists for the desired records," (2) "that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial," and (3) "that the motion is made in good faith and is not intended as a general fishing expedition." Ibid. The court added that "the custodian of the records ... and the third party who is the subject of the records ... shall be afforded notice and an opportunity to be heard on whether the records sought are relevant or covered by a statutory privilege," and that, "if a judge orders the issuance of a rule 17(a)(2) summons, all presumptively privileged records that are summonsed shall be retained in court under seal, and shall be inspected only by counsel of record for the defendant who summonsed the records." Id. at 145-146.

We recognize that some of Sally's statements regarding the details of the assaults were inconsistent. However, evidence of inconsistent statements is not enough. There was no specific information presented that indicated Sally discussed the sexual assaults during her short stay at Bournewood Hospital. See Lampron, supra at 271 ("the affidavit must establish with specificity the relevance of the requested documents"). To the contrary, the evidence at trial showed that Sally did not disclose the fact she had been raped for several months.