SUPREME JUDICIAL COURT 
 
 YATIA Y[1] vs. DHARMAL SAFI & another[2]

 
 Docket:
 SJC-13633
 
 
 Dates:
 April 2, 2025
 
 
 Present:
 
 
 
 County:
 
 

 
 Keywords:
 Supreme Judicial Court, Superintendence of inferior courts. Rape. Indecent Assault and Battery. Evidence, Medical record, Relevancy and materiality, Impeachment of credibility. Mental Health. Practice, Criminal, Affidavit, Record
 
 

             The defendant appeals from a judgment of the single justice vacating orders of a Superior Court judge allowing the defendant's motions, pursuant to Mass. R. Crim. P. 17 (a) (2), 378 Mass. 885 (1979), for issuance of pretrial summonses to four medical and mental health providers.[3]  Discerning no abuse of discretion or other error of law on the part of the single justice, we affirm.
            Background.  In 2021, the defendant was indicted and arraigned on three charges of rape of a child, G. L. c. 265, § 23, and one charge of indecent assault and battery on a child under the age of fourteen, G. L. c. 265, § 13B.  The charges were based on an incident that is alleged to have occurred on September 5, 2020, during which the defendant is accused of having raped and sexually assaulted the complainant.
            Two years after arraignment, the defendant, pursuant to Mass. R. Crim. P. 17 (a) (2), filed motions asking that the court issue summonses for all the complainant's medical and mental health records from (1) Cooley Dickinson Health Care (Cooley Dickinson), (2) Clinical and Support Options (CSO), (3) Cambridge Health Alliance (CHA), and (4) Northeast Center for Youth and Families (Northeast Center).  As to the first three of these providers, the defendant sought records for the period September 13, 2020, to December 31, 2020.  As to Northeast Center, the defendant sought records for the longer period of January 1, 2019, to December 31, 2021.
            The defendant's motions were identical in substance and were each supported by virtually the same affidavit of trial counsel.  We accordingly recite the substance of their contents as one.  The complainant's mother called police on September 14, 2020, to report that the complainant, then age twelve, had disclosed that she had been sexually assaulted by the defendant, then age twenty, on September 5, 2020.[4]  The complainant had made the disclosure to her mother after running away from home with a plan to commit suicide.  The complainant told her mother that she had been experiencing increased depression and sadness and felt pressured to have sex.  The complainant was admitted to the Cooley Dickinson emergency department on September 13, 2020.  Following her hospitalization at Cooley Dickinson, the complainant was transported to CSO on September 15, 2020, where she underwent a crisis evaluation.  A written report of that evaluation was provided to the Department of Children and Families at its request.  After her evaluation by CSO, the complainant was transferred to an inpatient program at CHA on September 16, 2020, where she remained for approximately two weeks.  Following her treatment at CHA, the complainant resumed outpatient care with her psychiatrist and her therapist at Northeast Center, where she had been receiving therapy for over a year.  The complainant had been previously diagnosed with attention deficit hyperactivity disorder, oppositional defiant disorder, disruptive mood dysregulation disorder, anxiety disorder, posttraumatic stress disorder, and major depressive disorder.
            The defendant contended that the complainant's mental health and medical records "contain information regarding her mental state both around the time she disclosed the alleged assault to her mother and the time period encompassing the assault itself."  The defendant thus argued that the records were relevant to the complainant's state of mind at both points in time.  Moreover, the defendant argued that the complainant's "mental health has a direct bearing on her credibility as a witness in general" and is relevant to "her ability to perceive, recollect, and report the alleged incident."  The defendant also asserted, without reference to any particulars, that he had a good faith, specific, and reasonable basis for believing that the records would contain relevant and material exculpatory evidence.
            The motions were opposed by the complainant and by the Commonwealth.  After hearing, a Superior Court judge allowed the motions, writing only that he found that the defendant had met the Lampron-Dwyer threshold showing.  The judge did not elaborate on his reasoning, nor did he make any findings.  See Commonwealth v. Dwyer, 448 Mass. 122, 139-140, 147 (2006) (Appendix); Commonwealth v. Lampron, 441 Mass. 265, 270-271 (2004).
            The complainant then sought relief pursuant to G. L. c. 211, § 3, from a single justice, contending that the Superior Court judge's rulings were overbroad and erroneous.  Basing his decision only on the record that had been before the Superior Court judge, the single justice concluded that the defendant had not met the Lampron-Dwyer standard because he had relied only on generalities and speculation to argue that the complainant's mental health records contained information that was both evidentiary and relevant.  Accordingly, the single justice vacated the orders, but he did so without prejudice to the defendant's right to file one or more narrower motions in compliance with Lampron-Dwyer.  The defendant now appeals from the ruling of the single justice.
            Discussion.  "[W]e will not disturb the single justice's [decision] absent an abuse of discretion or other clear error of law."  Baez v. Commonwealth, 494 Mass. 1001, 1001 (2024), quoting Garcia v. Commonwealth, 486 Mass. 341, 343 (2020).  The single justice's decision at issue here has two components:  first, his decision to confine his review to the arguments and record before the Superior Court judge; second, his conclusion that, on that record, the defendant had not met the threshold showing required under Lampron-Dwyer.  We address each aspect of the single justice's decision in turn.
            Whenever a defendant files a motion, pursuant to Mass. R. Crim. P. 17 (a) (2), seeking a summons for "books, papers, documents, or other objects" from a third party, the defendant shall, among other things, support the motion with an affidavit as required by Mass. R. Crim. P. 13 (a) (2), as appearing in 442 Mass. 1516 (2004).  Dwyer, 448 Mass. at 147 (Appendix).  "The purpose of the affidavit requirement of Mass. R. Crim. P. 13[ (a) (2)] is:  (1) to give the judge considering the motion a statement of anticipated evidence, in reliable form, to meet the defendant's initial burden of establishing the facts necessary to support his motion . . . and (2) to provide the Commonwealth with fair notice of the specific facts relied on in support of the motion set forth in a form, i.e., under oath, which is not readily subject to change by the affiant."  Costa v. Commonwealth, 440 Mass. 1003, 1004 (2003), quoting Commonwealth v. Santosuosso, 23 Mass. App. Ct. 310, 313 (1986).  Here, the defendant submitted to the Superior Court four affidavits from his counsel, one in support of each of his four rule 17 motions.  However, on appeal before the single justice, he submitted an additional affidavit from different counsel, which contained new and different information.  Moreover, the defendant relied on the new information to argue to the single justice a new and different reason why the medical and mental health care records were relevant.  
            The single justice properly confined himself to the record and arguments that had been presented to the Superior Court judge.  See Baez, 494 Mass. at 1002 n.4 ("questions were not properly before" single justice where there was "no indication in the record" that those issues were raised in lower court).  To conclude otherwise would essentially render meaningless rule 13 (a) (2)'s requirement that "an affidavit detailing all facts relied upon in support of the motion" be attached to the rule 17 motion (emphasis added).  "The process by which rule 17 documents may be viewed is governed by the protocol established in" Lampron, 441 Mass. at 270-271, and Dwyer, 448 Mass. at 139-140, which requires that the affidavit contain all facts and grounds for the motion.[5]  Matter of an Impounded Case, 491 Mass. 109, 117 (2022).  The correct time to put forward facts and arguments concerning the rule 17 motions was when the motions were presented to the Superior Court judge; review under G. L. c. 211, § 3, was not the time to expand the factual record or to raise new arguments concerning the fact-based balance to be struck between the complainant's statutorily protected privacy rights, see G. L. c. 233, § 20B, and the defendant's due process right to the evidence.  See Matter of an Impounded Case, 491 Mass. at 118 (Lampron-Dwyer protocol entails careful balancing of competing rights and interests).  See also Commonwealth v. Malone, 65 Mass. App. Ct. 285, 288 n.4 (2005) ("we should not, in the first instance, engage in the balancing test [to evaluate an alleged speedy trial violation], without the motion judge having first made findings of fact").  
            Confining his review to the trial court record, the single justice concluded that the defendant's rule 17 motions were overbroad and that they were based on conclusory averments and speculation.  As described above, the affidavits submitted to the trial court set out certain statements the complainant made to her mother after the assault, the mother's view that the complainant's increased depression may have been related to her premenstrual dysphoric disorder, and the chronology of her treatment from the four institutions from which records were being sought.  The affidavits averred that the timing of the complainant's treatment was the reason they were relevant to the complainant's state of mind at the time of the assault and at the time of the first report to her mother.  In addition, the affidavits stated, without any elaboration or identified basis, that the defendant had a "good faith, specific and reasonable basis for believing" that the records contained "exculpatory evidence that is relevant and material to the issue of guilt."
            We discern no abuse of discretion by the single justice.  See L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014) (abuse of discretion occurs where judge makes clear error of judgment in weighing factors relevant to decision "such that the decision falls outside the range of reasonable alternatives").  While we do not foreclose the possibility that the complainant's medical and mental health records may contain evidentiary and relevant information, the defendant's original affidavits did not meet the Lampron-Dwyer standard; at bottom, those affidavits relied solely on the timing of the complainant's treatment and the ipse dixit that timing alone established relevance to the complainant's credibility.  See Commonwealth v. Jones, 478 Mass. 65, 70 (2017) (relevance not established by mere existence of mental health records); Lampron, 441 Mass. at 269 ("[p]otential relevance and conclusory statements regarding relevance are insufficient"); Commonwealth v. Bourgeois, 68 Mass. App. Ct. 433, 438 (2007) (fact of mental health treatment or mental health problems not enough, without more, to bear on credibility of victim).
Judgment affirmed.
            Merritt Schnipper for Dharmal Safi.
            Asseret Frausto (Matthew L. Knowles & David Quinn Gacioch also present) for the petitioner.
            Cynthia M. Von Flatern, Assistant District Attorney, for the Commonwealth.
 
 
 
            [1] A pseudonym.
            [2] Commonwealth.
            [3] Although the complainant commenced this action by filing a petition in the county court, for convenience we refer to Dharmal Safi as "the defendant" rather than "the respondent."
            [4] The mother also reported that the complainant's increased depression was likely a symptom of premenstrual dysphoric disorder.
            [5] Under that protocol, the defendant
"must establish good cause, satisfied by a showing '(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."'"  
Commonwealth v. Lampron, 441 Mass. 265, 269 (2004), quoting United States v. Nixon, 418 U.S. 683, 699-700 (1974).  The good cause standard requires a judge to "balance the rights of the parties based on the particular facts of each case."  Boston Herald, Inc. v. Sharpe, 432 Mass. 593, 604 (2000).  Once that standard has been satisfied, the obtaining, inspection, and review of the documents are governed by the protocol we established in Dwyer, 448 Mass. at 147 (Appendix).